## STATE ex rel. JOHN C. BENSON v. JULIUS A. SCHMAHL.[1]

February 27, 1914.

Nos. 18,623—(315).

**Primary election — members of legislature of 1913 eligible as candidates.**
Members of the legislature which enacted chapter 400, Laws of 1913, are not prohibited by section 9, article 4, of the Constitution, from becoming candidates for state auditor at the ensuing primary election, there being no increase made by that law in the emoluments received by the incumbent of that office at the time of its enactment or at the time of its taking effect.

Upon the affidavit of John C. Benson, made pursuant to G. S. 1913, § 357, this court ordered Julius A. Schmahl, as secretary of state, to cancel the filing of the affidavit of Henry Rines, as a candidate for state auditor, on the Republican ballot, at the ensuing primary election, and refrain from certifying to the county auditors of the several counties of the state the name of Henry Rines as a candidate for state auditor, or show cause why he should not do so. The secretary of state made return, and the order to show cause was discharged.

*John C. Benson,* pro se.

*Lyndon A. Smith,* Attorney General, and *William J. Stevenson,* Assistant Attorney General, for respondent.

[1] Reported in 145 N. W. 794.

HOLT, J.

This is a proceeding to restrain the secretary of state from placing the name of Henry Rines on the ballots for the ensuing primary election as a candidate for the office of state auditor.

It is made to appear that Mr. Rines has filed the proper affidavit and paid the requisite fee to entitle him to become such candidate and that the secretary of state intends to cause his name to be placed on the ballots as such. It is also conceded that Mr. Rines was a member of the house of representatives during the legislative session of 1913 when by chapter 400 of the laws thereof the salary of the state auditor was fixed at $4,600 per year. Relator's contention is that this was an increase in the emoluments of the office of state auditor and therefore Mr. Rines is not now eligible to that office. Section 9, article 4, state Constitution.

By virtue of statutes in force at the time of the enactment of chapter 400, p. 571, Laws of 1913, the state auditor was receiving and, for some years prior thereto, had been receiving $4,600 as compensation for the services imposed on him by law. Subdivision 3 of section 68, R. L. 1905, gave him a yearly salary of $3,600; section 5 of chapter 375, p. 430, Laws of 1909, appropriated $600 per year as additional salary to the state auditor, and from that time on including the fiscal year ending July 31, 1913, similar appropriations were made (section 4, chapter 265, p. 366, Laws of 1911) and by chapter 470, p. 730, Laws of 1907, the state auditor was made the secretary of the state drainage commission and paid at the rate of $400 per year. Section 32 of the last-mentioned act provides that the records which the state auditor, as secretary of the drainage commission, is required to make shall become a part of the state auditor's office, and "he shall be allowed such fees and compensation for extra services so rendered, or for necessary clerk hire, as to the members of the commission shall seem just and reasonable." Relator does not traverse respondent's averment that under the provision quoted the state auditor has ever since its enactment received as such secretary of this commission $400 each year. So that as a matter of fact the state auditor, for the services imposed upon him by law, was receiving a total compensation of $4,600 per year. That this amount was paid

him under three different provisions, namely, as salary, as additional salary by way of biannual appropriations, and as compensation for extra work, does not signify. It was the lawful amount which the state auditor was receiving when Mr. Rines was elected to the legislature which enacted chapter 400, p. 571, Laws of 1913. Section 2 thereof plainly terminated all right of the state auditor to receive, after August 1, 1913, any remuneration for services rendered the drainage commission and the appropriation for the additional yearly salary of $600 ceased with the expiration of the fiscal year on July 31, 1913. Therefore on August 1, 1913, when the new law went into effect, the compensation of the auditor was no more than it had been for several years immediately preceding. It was precisely the same.

We think it clear that the word emoluments in the Constitution does not refer to the fixed salary alone, but includes such fees and compensation as the incumbent of an office is by law entitled to receive because he holds such office and performs some service required of the occupant thereof. The Century Dictionary defines emoluments as: "The profit arising from office or employment; that which is received as compensation for services, or which is annexed to the possession of office as salary, fees and perquisites," and to this definition Bouvier adds: "It imports any perquisite, advantage, profit or gain arising from the possession of an office."

The relator seems to rest his contention on the fact that the additional salary of $600 per year, which the auditor has been receiving since 1909, was not fixed for an indefinite time in the future, but was an appropriation by successive legislatures for specified fiscal years and which terminated July 31, 1913, therefore after that date he could claim no more than $4,000 in virtue of any existing law and hence the new law increased the emoluments. This argument is more technical than substantial. The fact remains that under various statutes the state auditor was lawfully receiving $4,600 per year from his office up to July 31, 1913, when, under one specific act which then went into effect, and enacted when Mr. Rines was a member of the legislature, the salary was fixed at exactly the same amount. We fail to see any increase in the emoluments of the office.

There is nothing to the claim that the $400 per year received as secretary of the drainage commission is not an emolument of the office of state auditor, for under the law none could be secretary but the auditor.

By section 7, article 7, of the Constitution the right of a voter to become a candidate for office is guaranteed. This provision and its importance as a personal right and privilege must be kept in mind, in applying that part of the Constitution here invoked by the relator, to the end that the personal right intended to be secured by the one and the public welfare by the other be both attained in an equal degree of fairness.

We reach the conclusion that the emoluments of the office of state auditor were not increased by chapter 400, p. 571, Laws 1913, over what was received by that official at the time of its enactment, hence the order to show cause should be discharged and the proceeding dismissed.

So ordered.