## ARCHIE H. MILLER v. MIKE HOLM.[1]

April 6, 1944.

No. 33,833.

*Karl G. Neumeier,* for relator.

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for respondent.

HOLT, COMMISSIONER.

This is an original proceeding in this court to compel the secretary of state, Mike Holm, to receive relator's filing as a candidate

[1] Reported in 14 N. W. (2d) 99.

for the office of lieutenant governor of this state at the primary to be held July 10, 1944.

The facts are not in dispute. Relator is a citizen of the United States, 57 years of age, and since 1914 has continuously resided in Hennepin county. In the general November 1942 election, relator was elected state senator from the thirty-sixth senatorial district, duly qualified on January 5, 1943, and on that day was by the state senate elected its president *pro tempore*. At that session of the legislature a bill was enacted increasing the salary or pay of the members of the legislature to take effect the first Tuesday after the first Monday in January 1945. L. 1943, c. 629. By Minn. Const. art. 5, § 6, the compensation of the lieutenant governor is double that of a state senator. On May 10, 1943, relator resigned his office as state senator and has never since voted or acted as such, but has occupied the office of lieutenant governor, to which he succeeded when the elected lieutenant governor, Edward J. Thye, became governor upon the resignation of Governor Harold E. Stassen.

The part of the state constitution standing in the way of relator is art. 4, § 9, reading:

"No senator or representative shall, during the time for which he is elected, hold any office under the authority of the United States or the State of Minnesota, except that of postmaster, and no senator or representative shall hold an office under the state which has been created or the emoluments of which have been increased during the session of the legislature of which he was a member, until one year after the expiration of his term of office in the legislature."

Relator claims that he had the right to resign the office of state senator, and he did so on May 10, 1943, and that ended the "time for which he" was elected. It seems to us that such would be a forced construction, even though the word "term" is used in respect to emoluments in the second part of the section. It is contrary to State ex rel. Childs v. Sutton, 63 Minn. 147, 65 N. W. 262, 30 L. R. A. 630, 56 A. S. R. 459, *infra*. And relator is clearly barred from filing under the second part of § 9. It is true that the pro-

visions of the constitution to which reference has been made automatically increase the salary of the lieutenant governor when the salaries of the state senators are increased; but, since the increase did not go into effect until the first Tuesday after the first Monday in January 1945 (art. 4, § 7, authorizes the members of the legislature to increase their salaries), members of the legislature are free to seek reëlection. There may be some apparent injustice in not extending the same privileges to relator, who holds the office of lieutenant governor not by election of the people but by the state senate. But to compensate therefor, relator has the chance of becoming governor should a vacancy in that office occur. There can be no doubt that relator was elected for the four-year term ending January 1947. In the absence of the restrictions of art. 4, § 9, relator, being a qualified elector in the district where he resides and has resided, could file for any office to be filled at the coming election. (Art. 7, § 7.)

Relator relies somewhat on language used in the early case of Barnum v. Gilman, 27 Minn. 466, 8 N. W. 375, 38 Am. R. 304. However, that was a *quo warranto* suit not brought by the attorney general or with his consent, but by one who had been defeated for the office of lieutenant governor by the respondent Gilman, who had received the certificate of election and had qualified. The language which is seized upon by this relator is termed *obiter* in State ex rel. Childs v. Sutton, 63 Minn. 147, 65 N. W. 262, 30 L. R. A. 630, 56 A. S. R. 459. Sutton was appointed boiler inspector while the term for which he was elected representative to the legislature was running, and it was held that he could not hold the office, though he resigned as representative two days before being appointed.

As tending in the same direction as the Sutton case, we cite State ex rel. Marr v. Stearns, 72 Minn. 200, 75 N. W. 210; State ex rel. Olson v. Scott, 105 Minn. 513, 117 N. W. 1044; State ex rel. Benson v. Schmahl, 125 Minn. 104, 145 N. W. 794; State ex rel. Anderson v. Erickson, 180 Minn. 246, 230 N. W. 637. From other jurisdictions which tend in the direction of our own, we cite Advisory

Opinion to the Governor, 94 Fla. 620, 113 So. 913; Baskin v. State ex rel. Short, 107 Okl. 272, 232 P. 388, 40 A. L. R. 941.

The purpose of art. 4, § 9, is pointed out in the decisions cited, and nothing further need be added. Relator contends that the last clause in art. 4, § 9, means that, since he resigned as state senator on May 10, 1943, more than one year prior to the primaries at which he desires to be a candidate for lieutenant governor, there is no obstacle to his filing. But we see no way so to construe the language which says that no senator "shall hold an office" under the state "the emoluments of which have been increased during the session of the legislature of which he was a member, until one year after the expiration of his term of office in the legislature," which is not until January 1948.

We conclude that the secretary of state rightly refuses to receive relator's filing as a candidate for the nomination of lieutenant governor in the primary to be held July 10, 1944.

The order to show cause is discharged.

STREISSGUTH, JUSTICE (dissenting).

The majority opinion completely ignores the last sentence of Minn. Const. art. 5, § 6, which I consider absolutely controlling: "Before the close of each session of the Senate they shall elect a president *pro tempore,* who shall be lieutenant governor in case a vacancy should occur in that office."

Art. 4, § 9, and art. 5, § 6, of the constitution having been adopted at the same time, "must be construed together, as a whole, and with reference to the purposes for which the constitution was ordained. It is not permissible to select a single, isolated provision, and give it effect according to its literal reading, without reference to modifications made by the express language of other provisions of the instrument." State ex rel. Marr v. Stearns, 72 Minn. 200, 211, 75 N. W. 210, 212.

Construing the two sections together, the first clause of art. 4, § 9, must be interpreted as if it read:

"No senator or representative shall, during the time for which he is elected, hold any office under the authority of the United

States or the State of Minnesota, except that of postmaster—*and except that, in case a vacancy should occur in the office of lieutenant governor, the president pro tempore of the senate may hold the office of lieutenant governor."*

By no other interpretation can recognition and effect be given to the quoted excerpt from art. 5, § 6. The construction of art. 4, § 9, which the majority proposes would have prevented Senator Miller or any other president *pro tempore* of the state senate from qualifying as lieutenant governor upon the elevation of our present Governor Edward J. Thye from lieutenant governor to governor; for the prohibition in that section is not that "no senator shall be a candidate for office," but that "no senator * * * shall, during the time for which he is elected, *hold* any office," etc. But that such was not the effect of art. 4, § 9, was definitely held in State ex rel. Marr v. Stearns, 72 Minn. 200, 211, 75 N. W. 210, 212. The court there said (72 Minn. 216, 75 N. W. 214):

"* * * this section of the constitution does not, explicitly or otherwise, make * * * a senator ineligible to the office of lieutenant governor during the term for which he was elected; for it is otherwise expressly provided by the constitution, that a senator who is president pro tempore shall become lieutenant governor in case of a vacancy."

This being true, *a fortiori,* one who, though once a state senator, has been elevated to the office of lieutenant governor by reason of a vacancy caused through no act of his, should not be barred from continuing to hold his new office, if elected thereto by the people, simply because the four years for which he originally was elected senator have not run. The time for which he was elected senator has literally not expired in the one case any more than in the other.

When we come to the construction of the last clause of art. 4, § 9, even less difficulty is encountered. That clause provides: "no senator or representative shall hold an office under the state which has been created or the emoluments of which have been increased

during the session of the legislature of which he was a member, until one year after the expiration of his term of office in the legislature." The emoluments of the office of lieutenant governor were increased during the 1943 session of the legislature of which the relator was a member; but, if more than "one year after the expiration of his term of office in the legislature" has expired, there is no prohibition against his being a candidate for lieutenant governor.

When did relator's "term of office" expire, or when will it expire: On May 10, 1943, when he resigned from the office of state senator, or in January 1947, when the "time" (not term) for which he was elected senator has run its course—though without his presence in the senatorial stream since May 10, 1943?

The question is not complicated by the relator's having attempted to hold the office of lieutenant governor without resigning as state senator, as was the case of State ex rel. Marr v. Stearns, *supra*. Insofar as that case discusses the effect of a resignation as state senator, it is *obiter dictum,* for the state senator there under consideration had assumed the office of lieutenant governor without resigning as state senator. The relator here, however, did resign his office as state senator on May 10, 1943; yet the majority reasons that his "term of office" has not expired. This clearly is a *non sequitur*.

Most significant is the difference in phraseology in the first and last clause of art. 4, § 9. Under the first clause, the period of a senator's disqualification to other offices continues "during the *time for which he is elected";* and under the final clause the period of disability expires *"one year* after the *expiration of his term of office* in the legislature."

It must be presumed that each of the two clauses was inserted for a definite reason. Crawford, Statutory Construction, § 166. Effect must be given, if possible, to every word, clause, phrase, and sentence in the entire section. 2 Sutherland, Statutory Construction, § 4705; Crawford, Statutory Construction, § 165. Where analogous words have been used, as here, each must be presumed to be susceptible of a separate and distinct meaning, for the con-

stitutional convention is not supposed to have used words without a meaning.

"* * * when precision is required, no safer rule can be followed than always to call the same thing by the same name. * * * a change of language, probably, suggests the presumption of change of intention." Maxwell, Interpretation of Statutes (8 ed.) pp. 276, 278.

So, in construing a statutory or constitutional provision, the words or expressions which obviously are by design omitted must be considered, as must "the connexion of the * * * clause with other clauses in the same statute [or constitutional provision], and the conclusions which on comparison with other clauses may reasonably and obviously be drawn." Pollock, C. B., in Attorney General v. Sillem, 2 H. & C. 431, 159 Eng. Rep. R. 178, 217.

Note particularly the use of the word *"time"* in the first clause, and the word *"term"* in the second. Considering the change in phraseology, it seems most logical to assume that the legislature did not intend that the word *"term"* (etymologically, an "end" or "bound") should be construed to mean "a fixed period or definite limit of time" (Standard Dictionary), but rather to mean "the time during which anything exists" (Standard Dictionary) or "the time for which anything lasts" (Webster's New International Dictionary).

True, a public officer's term of office usually extends over the entire time for which he is elected, but where death, resignation, or removal intervenes, his term of office comes to an abrupt and effective "end" or "bound," while "the *time* for which he was elected" marches on. This distinction the majority fails to recognize.

In the case of relator, *"the time for which he is elected"* state senator will expire January 1947. But his *"term of office"* as senator expired on the day, hour, and minute his resignation was filed. As pointed out in Barnum v. Gilman, 27 Minn. 466, 469, 8 N. W. 375, 376, 38 Am. R. 304—

"the disqualification was attached *eo nomine* to a 'senator or representative,' which, of itself, clearly implies that it can only continue while the party affected by it remains a senator or representative. *When he ceases to be such, whether by lapse of time, resignation, or otherwise, the disability terminates.* The clause, 'during the time for which he is elected,' cannot properly be construed as enlarging the scope of the prohibition, so as to include persons not in fact members of. the legislature. The expressed purpose of the provision was to prohibit senators and representatives from holding any other office than postmaster, and not to disqualify for a definite period of time persons who may become such, whether they remain in office or not. The clause may very properly be construed to mean 'during his term of office,' and this may be the full term during which the office may be held, or such shorter period as the incumbent may consent to hold it. *The term of every elective office, in the absence of any express enactment of law to the contrary, may be terminated at the pleasure of the incumbent, by resignation, or by the acceptance of an incompatible office."* (Italics supplied.)

The case of State ex rel. Childs v. Sutton, 63 Minn. 147, 65 N. W. 262, 30 L. R. A. 630, 56 A. S. R. 459, does not hold to the contrary. The clause there construed was *"during the time for which he is elected"* appearing in the first prohibition of art. 4, § 9, and not the clause *"term of office"* appearing in the final prohibition. * The fact that the constitution uses two different expressions should establish the fact that different periods of time were intended to be used in the two situations outlined in the section. This is but applying the well-accepted rules of constitutional and statutory construction to which I have referred.

"* * * Everything being equal in other. respects, that interpretation should surely be accepted by the courts as constituting the one intended by the lawmakers, which operates most equitably, justly and reasonably as determined by our existing standards of proper conduct and by our conceptions of what is right and what

174

is wrong, of what is just and what is unjust." Crawford, Statutory Construction, § 175.

And, in my opinion, the makers of the constitution never intended that under the circumstances here existing a lieutenant governor should be prevented from filing for election to the very office he holds by virtue of succession under the constitution itself. I therefore respectfully dissent.

THOMAS GALLAGHER, JUSTICE (dissenting).

I concur in the dissent.