RAFAEL DE J. CORDERO, AUDITOR OF PUERTO RICO, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION, HON. EMILIO S. BELAVAL, JUDGE, Respondent; VÍCTOR GUTIÉRREZ FRANQUI, Intervener.

No. 1896. Argued April 3, 1951.—Decided April 9, 1951.

---

[1] *People* v. *Suazo*, 63 P.R.R. 869.

*Gilberto Ramírez Velasco* for petitioner. *Federico Tilén, Acting Attorney General,* and *José C. Aponte, Assistant Attorney General,* for intervener, plaintiff in the main action. *Rafael Arjona Siaca* as *amicus curiae.*

MR. JUSTICE SNYDER delivered the opinion of the Court.

The question presented is whether a Senator may resign his office and be appointed Attorney General during the unexpired portion of the four year term for which he was elected to the Senate.

On November 2, 1948 Víctor Gutiérrez Franqui was elected to the Senate of Puerto Rico as a Senator at large for a four year term beginning January 2, 1949. Thereafter, he took the oath and performed the duties of that office until February 5, 1951. On the latter date Lic. Gutiérrez resigned as Senator; the Governor accepted his resignation and named him by a recess appointment to fill a vacancy in the office of the Attorney General of Puerto Rico; and he took the oath of office as Attorney General.

The Auditor of Puerto Rico had already taken the position, in response to a letter of February 1, 1951 from the Governor, that under § 30 of the Organic Act no member of the present Legislature, even if he had previously resigned his legislative post, could be validly appointed Attorney General during the four year term beginning January 2, 1949. Lic. Gutiérrez filed the present suit in the district court against the Auditor praying for a declaratory judgment that his appointment was valid. The answer of the Auditor admitted all the facts and the parties submitted the case for decision. The lower court entered judgment in favor of Lic. Gutiérrez. We issued a writ of certiorari at the behest of the Auditor to review this judgment.

 Our first Organic Act did not contain § 30. On the contrary, Congress used the opposite approach when it enacted the Foraker Act in 1902. It gave the members of the Executive Council a combination of legislative and executive duties. 31 Stat. 77, 81; see *González* v. *District Court*, 62 P.R.R. 152, 167. The Jones Act, enacted in 1917 as our Organic Act, introduced for the first time in Puerto Rico the principle of complete separation of executive and legislative functions. An insular Senate, which in substance took over the legislative functions of the old Executive Council, was created by the Jones Act. 39 Stat. 951, 959–60, 48 U.S.C.A. § 819.

An inevitable corollary of this new principle of separation of the legislative and executive powers was the doctrine of incompatibility of dual office-holding in these two branches of government. Congress recognized this and accordingly passed § 30. But in 1917 Congress did not confine itself to a prohibition against dual office-holding. Congress felt at that time that the doctrine of separation of powers called for two additional safeguards which it established in § 30. The first was the ineligibility of legislators for any other position by appointment under the government of Puerto Rico during the entire terms for which they were elected.

The second was their ineligibility for any office by appointment created by the Legislature until two years after their terms of office had expired.[1]

Article I, § 6, cl. 2 of the U. S. Constitution prevents dual office-holding by prohibiting a member of Congress during his incumbency from holding any office under the United States. It also has a prohibition similar to the second prohibition in § 30 in substantially the same language as the 1917 version of § 30. But it does not contain a provision like the first prohibition found in § 30.[2] However, despite the lack of such a limitation in the Federal Constitution, Congress felt it advisable to insert the first prohibition in § 30 of the Jones Act. Congress also included a similar provision in the Organic Act of Hawaii. In doing so, Congress followed the lead of 19 states with virtually identical provisions. Thirteen other State Constitutions and the Organic Act of Alaska contain only the second prohibition of § 30. But in providing for the latter prohibi-

---

[1] Section 30, as originally enacted in 1917, read as follows:

"That the term of office of senators and representatives chosen by the first general election shall be until January first, nineteen hundred and twenty-one, and the terms of office of senators and representatives chosen at subsequent elections shall be four years from the second of January following their election. In case of vacancy among the members of the senate or in the house of representatives, special elections may be held in the districts wherein such vacancy occurred, under such regulations as may be prescribed by law, but senators or representatives elected in such cases shall hold office only for the unexpired portion of the term wherein the vacancy occurred, and no senator or representative shall, during the time for which he shall have been elected, be appointed to any civil office under the government of Porto Rico, nor be appointed to any office created by Act of the legislature during the time for which he shall have been elected until two years after his term of office shall have expired." 39 Stat. 951, 959–60, 48 U.S.C.A. § 819.

[2] Article I, § 6, cl. 2 of the U. S. Constitution reads as follows:

"No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."

tion, they likewise use phrases substantially identical with "during the time for which he shall have been elected".[3]

Lic. Gutiérrez concedes that § 30 as originally enacted would have made him ineligible for appointment to a civil office under the government of Puerto Rico for the entire four years for which he was elected, whether or not he resigned his legislative post at an earlier date. This concession is inevitable in view of the unambiguous provision therein that he could not be appointed "during the time for which he shall have been elected". Almost without exception the courts have held in cases construing similar constitutional provisions that the ineligibility exists during the entire period for which the legislator was elected, and is not affected by resignation of the legislative office. Annotations, 5 A.L.R. 117, 120–124, 40 A.L.R. 945.[4]

---

[3] Ala., Art IV, § 59, p. 17; Ariz., Art. IV, § 5, p. 71; Ark., Art. V, § 10, p. 105; Calif., Art. IV, § 19, p. 149; Colo., Art. V, § 8, p. 241; Del., Art. II, § 14, p. 304; Fla., Art. III, § 5, p. 329; Ga., Art. III, § 4, par. 7, p. 365; Ill., Art. IV, § 15, p. 457; Ind., Art. IV, § 30, p. 488; Md., Art. III, § 17, p. 731; Mass., Art. LXV, p. 799; Mich., Art. V, § 7, p. 307; Minn., Art. IV, § 9, p. 831; Miss., Art. IV, § 45, p. 864; Mo., Art. IV, § 12, p. 898; Mont., Art. V, § 7, p. 949; Neb., Art. III, § 16, p. 987; Nev., Art. IV, § 8, p. 1011; N. J., Art. IV, § 5, par. 1, p. 1054; N. M., Art. IV, § 28, p. 1070; N. Y., Art. III, § 7, p. 1105; Okla., Art. V, § 23, p. 1235; Ore., Art. IV, § 30, p. 1307; Pa., Art. II, § 6, p. 1327; S. D., Art. III, § 12, p. 1434; Tex., Art. III, § 18, p. 1493; Utah, Art. VI, § 7, p. 1542; Wash., Art. II, § 13, p. 1631; W. Va., Art. VI, § 15, p. 1663; Wisc., Art. IV, § 12, p. 1692; Wyo., Art. III, § 8, p. 1713; 48 U.S.C. §§ 82, 588.

The page references for the State Constitutions are to Constitutions of the States and United States, Vol. III, New York State Constitutional Convention Committee, 1938. Our attention has not been called to any pertinent changes in the State Constitutions since 1938.

[4] To the same effect, *State ex rel. Fraser* v. *Gay,* 28 S. 2d 901 (Fla., 1947); *State ex rel. Pennick* v. *Hall,* 173 P. 2d. 153 (Wash., 1946); *Miller* v. *Holm,* 14 N.W. 2d 99 (Minn., 1944) (with strong dissenting opinion of two Justices).

The only case to the contrary is *Meredith* v. *Kauffman,* 169 S.W. 2d 37 (Ky., 1943).

Maryland took the wise, although probably unnecessary, precaution of providing that "No senator or delegate . . . , *notwithstanding he may thereafter resign,* shall during the *whole* period of time for which he was elected be eligible to any office which shall have been created . . . during such term." Md. Const., Art. III, § 17, p. 731. (Italics ours.)

This case has arisen precisely because § 30 was amended in 1938. In that year, apparently in response to a request from the Resident Commissioner of Puerto Rico, § 30 was amended to provide that vacancies in the insular legislature shall be filled by appointment rather than by special elections. In addition to this change, the House eliminated from § 30 both of the prohibitions against appointment of legislators to other offices. 83 Cong. Rec., Part 2, pp. 1573-74 (1938).

When the bill reached the Senate, the Senate concurred in the action of the House with reference to filling vacancies in the Legislature. But it refused to acquiesce in the complete elimination of the two prohibitions found in the 1917 version of § 30. Instead, it restored these prohibitions in modified form. As enacted in 1917, § 30 provided in part that " . . . no senator or representative shall, *during the time for which he shall have been elected,* be appointed to any civil office . . .". (Italics ours.) In the Senate amendment of 1938, this sentence reads in part that "No senator or representative so elected or appointed shall, *during his term of office,* be appointed to any civil office . . .". (Italics ours.) The Senate Committee on Territories and Insular Affairs, in its written report to the Senate, stated that the language inserted in the House bill "restores the provision of existing law which prohibited any such senator or representative, during his term of office, from holding office under the civil government of Puerto Rico . . .". 83 Cong. Rec., Part 6, p. 6294 (1938). The House accepted the amendment and the bill as amended by the Senate became law. 52 Stat. 595, 48 U.S.C.A. § 819, 1950 Cumulative Pocket Part.[5]

---

[5] Section 30, as amended in 1938, reads as follows:

"The terms of office of senators and representatives elected at any general election shall be four years, commencing on the 2nd day of January following the date upon which such election was held. In case of a vacancy in the office of any senator or representative occurring by reason of death, resignation, or otherwise, the Governor, upon the

The controversy is therefore reduced to determining the meaning of the 1938 amendment of § 30. The Auditor contends that the amendment did not alter the legal content of § 30 with reference to the problem before us. He argues that in replacing "during the time for which he shall have been elected" with "during his term of office" Congress merely used a more concise phrase to express the same thought. To him this was only a change in form in order to eliminate tautological language. Consequently, despite the 1938 amendment, the Auditor asserts that § 30 still prohibits appointment of Lic. Gutiérrez as Attorney General for the entire four years for which he was elected, irrespective of his resignation as Senator.

In support of this contention, the Auditor places great reliance on the fact that in the first sentence of § 30 Congress defined "the term of office" as a fixed period of four years with a specific date on which it commenced to run. His position is that this definition is controlling throughout § 30. He therefore reads "his term of office" in the last sentence of § 30 as meaning the term of four years as defined in the first sentence. Under these circumstances, the Auditor is of the view that the personal pronoun in "his term of office" was meant to be impersonal and was inserted solely to avoid the alleged awkward construction which would have resulted from using "the" instead of "his" in that context. In short, according to the Auditor, "his term of office" refers to a fixed four year term, and not to the period of time a particular incumbent may serve.

recommendation of the central committee of the political party of which such senator or representative was a member, shall appoint a senator or representative from such political party to fill such vacancy who shall hold office for the remainder of the term for which his predecessor was elected. No senator or representative so elected or appointed shall, during his term of office, be appointed to any civil office under the Government of Puerto Rico, and no such senator or representative shall be eligible for appointment to any office created during his term of office until the expiration of two years after the date upon which his term of office shall have expired."

The Auditor cites, in support of this manner of reading "his term of office", cases where "the term of office" used under other circumstances has been held to mean the period for which a person is elected or appointed, and not the time a particular incumbent actually serves.[6] Finally, the Auditor asserts that the Senate Committee Report demonstrates unmistakably that Congress intended, despite the modification of its language, to establish in the 1938 version of § 30 exactly the same prohibitions embodied in the 1917 version.[7]

If Congress had preserved the language of the 1917 version, we could not disagree with the position taken by the Auditor. On the other hand, if the 1938 amendment had prohibited such appointment "during his tenure of office", "during his incumbency" or "while in office", no one could question the validity of the appointment of Lic. Gutiérrez. The case is here precisely because in 1938 Congress replaced the diaphanously clear phrase "during the time for which he shall have been elected" with the more controversial phrase "during his term of office".

We find it difficult to agree with the Auditor that the substitution of "during his term of office" for "during the time for which he shall have been elected" was designed solely to simplify the language of § 30. The original phrase is a classical one. Without a single exception, it was used in exactly this form in 32 states and two Organic Acts whenever the draftsmen desired to make a legislator ineligible for the entire period of time for which he was elected, irrespective of his resignation from the Legislature. See footnote 3. Not a single State Constitution has adopted the Auditor's theory that the shorter phrase is a more concise

[6] *People* v. *Le Fevre*, 40 P. 882 (Col., 1895); *State* v. *Knight*, 245 p. 267 (Mont., 1926); *State* v. *Rogers*, 18 P. 2d 617, 618 (Mont., 1933); *State* v. *Galusha*, 104 N.W. 197, 201 (Neb., 1905); *Annotation*, 50 L.R.A. (N. S.) 336, 343.

[7] Lic. Rafael Arjona Siaca appeared in the district court and in this Court as *amicus curiae* in support of the position taken by the Auditor.

equivalent of the longer phrase. On the contrary, even Constitutions written in more modern times, whether for reasons of imitation or other wise, cling to the classical phrase as words of art.

Constitutions and Organic Acts are drawn carefully and amended infrequently. If Congress had intended to retain inviolate the first prohibition of § 30, it seems likely that it would have used the clear and absolute terms of the traditional phrase. We cannot dismiss the deviation therefrom lightly as a question of syntax. Under the circumstances, we think it is more reasonable to say that Congress had some substantial purpose in mind when it modified the language of § 30 in this respect.

Nor can it be contended that the amendment of § 30 to provide for appointments rather than special elections to fill vacancies in the Legislature made it impossible or awkward to utilize the previous phraseology with reference to the ineligibility of legislators for civil office. Congress could easily have added "or appointed" to the original phrase "during the time for which he shall have been elected" if it had wished to preserve the prohibition in unamended form. Indeed, that is exactly how Nebraska handled the problem. Article III, § 16, Nebraska Constitution, p. 987.

We also find some significance in the use of the personal pronoun in "his term of office". We readily concede that, standing alone, this grammatical problem would not be decisive of the case before us. This would indeed be making "a fortress out of the dictionary". *Sucn. Giusti* v. *Tax Court*, 70 P.R.R. 109, 126, footnote 9. But we cannot fail to consider it as an additional argument which supports the position of Lic. Gutiérrez.

Undoubtedly, the doctrine of separation of powers played a large role in persuading Congress to enact the 1917 version of § 30. But Congress might have become convinced by 1938 that this principle should not be applied in Puerto Rico in such an extreme fashion as to prevent transfer of an

able Senator to an important executive post. *Cf. Banco Popular de Puerto Rico* v. *District Court*, 63 P.R.R. 63; *Buscaglia* v. *District Court of San Juan*, 145 F. 2d 274, 283–4, (C.A. 1, 1944), cert. denied 323 U. S. 793. Congress was thoroughly familiar with the Federal Constitution which provides only for incompatibility and not ineligibility under these circumstances. Congress may have reasoned that if the President may in the public interest appoint a United States Senator to the post of Attorney General of the United States, § 30 should be amended to permit the same action here.[8]

The House, where Puerto Rico's Resident Commissioner had a voice, eliminated entirely the prohibitions of § 30. The Senate would not agree. Although the legislative history is silent on this point, the Senate bill could have been designed to adopt the present wording of § 30 as a compromise between the two extreme positions represented by the original version of § 30 as against the House bill eliminating both prohibitions of § 30.

We do not think the Senate Report inexorably requires us to decide this case in favor of the Auditor. It is true it states that the Senate bill "restores the provision of existing law which prohibited any such senator or representative, during his term of office, from holding office under the civil government of Puerto Rico . . .". If the Senate bill had actually restored the identical language of the 1917 Act, we would unhesitatingly agree with the Auditor's interpretation of the Senate Report. But the latter must be read in the light of the actual language of the Senate bill. When read together with the bill itself, it is not unreasonable to extract from the Senate Report the inference that the first prohibition of § 30 was being restored in the Senate bill to the extent that it prohibited a Legislator from being

---

[8] This is not a hypothetical example. The Honorable J. Howard McGrath, Attorney General of the United States, resigned as Senator from Rhode Island to accept his present position.

appointed to a civil office and remaining in legislative office.

The Auditor asserts that incompatibility of dual office-holding is in force in Puerto Rico without any provision therefor in the Organic Act or insular legislation. He therefore argues that Congress could not have intended in 1938 to convert the first prohibition of § 30 from ineligibility for the four year term into incompatibility, as the latter was already in effect here. We do not stop to examine *People ex rel. Arjona v. Landrón*, 57 P.R.R. 65, on which the Auditor relies in making this contention. The fact that such incompatibility might be held by the courts to be implicit in the doctrine of separation of powers did not prevent the Founding Fathers and the draftsmen of a number of State Constitutions from embodying this principle in the Federal and some State Constitutions. By the same token, Congress might have preferred in 1938 to provide in § 30 an absolute prohibition rather than to leave the matter to implication and to possible construction by the courts on a case by case basis.

The cases cited in Annotations, 5 A.L.R. 117, 120–124, 40 A.L.R. 945, and footnote 4 are not of considerable aid here. As already noted, they were decided under Constitutions which prohibited appointment "during the time for which he shall have been elected". In coming to the conclusion of ineligibility those cases stressed the clear and emphatic meaning of this phrase. We do not regard them as standing for the proposition that the same result flows from the different phrase "his term of office".

Nor are the cases cited in footnote 6 which construe "the term of office" as a period fixed by law decisive. That phrase was used in those cases under other circumstances. They therefore are not controlling here. "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne* v. *Eisner*, 245 U. S. 418, 425; *Ballester* v. *Court of*

*Tax Appeals,* 61 P.R.R. 460, 477; *People* v. *López Lugo et al.,* 67 P.R.R. 585, 591–2. Ideas are prisoners of the words used to express them. We must decide here what "his term of office" means not elsewhere but in § 30 in the light of the context, surrounding circumstances and its legislative history. As no other jurisdiction has a similar constitutional provision, the cases from other jurisdictions are necessarily not applicable.

*People ex rel. Castro* v. *Padrón,* 60 P.R.R. 777, affirmed in 142 F. 2d 508 (C.A. 1, 1944), cert. denied 323 U. S. 791, sheds no light on this case. The controversy there was whether Padrón could hold both the posts of Senator and Secretary of the Capital. As the Court of Appeals pointed out at p. 509, "The only question . . . is whether [the post of Secretary of the Capital] is a civil office under the Government of Puerto Rico." There is nothing in the opinions of this Court and the Court of Appeals which is helpful in deciding the instant case.

We think we have demonstrated that the weight of the reasoning is in favor of incompatibility rather than ineligibility. Even if the question were a closer one, the modern tendency is to decide in favor of eligibility because of the desirability of permitting the executive the greatest possible discretion in the selection of officials. "Words limiting the right of a person to hold office are to be given a liberal construction in favor of those seeking to hold office, in order that the public may have the benefit of choice from all those who are in fact and in law qualified." See *Gazan* v. *Heery,* 187 S. E. 371, 378 (Ga., 1936) ; *State* v. *Health,* 132 S. W. (2) 1001, 1004 (Mo., 1939) ; *State ex rel. Fraser* v. *Gay, supra,* p. 904.

In view of the foregoing, we conclude that Congress undertook to change the substance of the first prohibition by the change it made in its key language. Once we reach that result, it is obvious that the only change Congress could possibly have had in mind was to convert the previous ineli-

gibility for office into a rule of incompatibility, as found in Art. I, § 6, cl. 2 of the Federal Constitution. "His term of office" as used in § 30 therefore now means the period actually served by a legislator. Consequently, once the resignation of Lic. Gutiérrez was accepted, *his* term of office had terminated and he was eligible for appointment as Attorney General.[9]

We close by pointing out that if the electorate of Puerto Rico accept the terms of The Act of Congress of July 3, 1950 and write their own Constitution, the problem raised by this case will disappear. That Act repeals § 30, to become effective when the Constitution of Puerto Rico becomes effective. 64 Stat. 320. The people of Puerto Rico will be free to determine by constitutional provision or otherwise what policy to adopt as to this matter. In the light of this situation, we "do not suppose that civilization will come to an end whichever way this case is decided". Mr. Justice Holmes dissenting in *Haddock* v. *Haddock*, 201 U. S. 562, 628.

The writ of certiorari will be discharged.

---

[9] Cases involving different questions have come to a similar conclusion as to the meaning of the phrase "term of office". *Cf. Board of Chosen Freeholders* v. *Lee*, 70 A. 925 (N. J., 1908); *Badger et al.* v. *U. S. ex rel. Bolles*, 93 U. S. 599, 603; *Carter* v. *State*, 186 p. 464, (Okla., 1919). We concede that these cases are not strictly in point. But no case could possibly be in point, because the 1938 version of § 30 as already noted is unique.