34

## LEONARD R. DICKINSON v. MRS. MIKE HOLM.[1]

August 18, 1954.

No. 36,469.

*M. A. Reed,* for petitioner.

*J. A. A. Burnquist,* Attorney General, and *Donald C. Rogers,* Assistant Attorney. General, for respondent.

CHRISTIANSON, JUSTICE.

This is an original proceeding in this court to compel Mrs. Mike Holm, secretary of state, to place petitioner's name on the ballot as a candidate for the Republican nomination for governor in the primary election to be held on September 14, 1954. Petitioner tendered his affidavit of candidacy together with the filing fee to the secretary of state on July 21, 1954. After the refusal of the secretary of state to accept the affidavit and filing fee, petitioner, pursuant to M. S. A. 202.08, applied to the chief justice of this court for an order directing the secretary of state to place petitioner's name on

---

[1]Reported in 65 N. W. (2d) 654.

the ballot or show cause why she should not do so. The secretary of state made return to this order on July 23, 1954, and the matter came on for a full hearing before this court on July 29, 1954, at which time the order to show cause was discharged.[2]

The premise upon which the secretary of state bases her refusal to permit petitioner to file as a candidate for the Republican nomination for governor is that petitioner is disqualified to be a candidate for that office in the 1954 elections by Minn. Const. art. 4, § 9, which provides:

"No senator or representative shall, during the time for which he is elected, hold any office under the authority of the United States or the State of Minnesota, except that of postmaster, and no senator or representative shall hold an office under the state which has been created or the emoluments of which have been increased during the session of the legislature of which he was a member, *until one year after the expiration of his term of office in the legislature.*" (Italics supplied.)

Petitioner was elected state senator from the 62nd legislative district at the general election on November 7, 1950, and qualified for said office on January 2, 1951. He continues to hold said office and was a member of the legislature during the 1951 regular session which enacted L. 1951, c. 712. Chapter 712 amended M. S. A. 350.02 to increase the salary of the governor to $15,000, thereby increasing the emoluments of that office within the meaning of art. 4, § 9, of the constitution. The secretary of state contends that since petitioner's four-year term as a state senator will not expire until January 1955 and one year will not have elapsed after the expiration of his term before he would take office as governor if successful in the

---

[2] It is ordered that the order to show cause issued herein on the 21st day of July, 1954, be and the same is hereby discharged. A formal opinion will follow.

Dated July 29, 1954.

BY THE COURT
ROGER L. DELL
Chief Justice.

primary and general elections, petitioner's candidacy is clearly prohibited by the second part of § 9.

The principal contention advanced by petitioner in opposition to the secretary of state's position is that the words "expiration of his term of office in the legislature" found in art. 4, § 9, are ambiguous and invite judicial construction. The substance of his argument is that art. 4, § 24, which now fixes the term of office of state senators at four years, prescribed only a two-year term for that office from the time our constitution was adopted until it was amended to its present form in 1877. Petitioner argues that it is not clear whether art. 4, § 9, in disqualifying a senator from holding an office, the emoluments of which have been increased during the session of the legislature of which he was a member "until one year after the expiration of his term of office," refers to the original two-year term or to the present four-year term prescribed by art. 4, § 24. He urges us to resolve this alleged ambiguity by holding that despite the amendment to art. 4, § 24, the words "term of office" in art. 4, § 9, refer to the original two-year term. Under this construction, petitioner's period of ineligibility to hold the office of governor would last only three years instead of five, and he would therefore be eligible as a candidate for governor in the primary election to be held on September 14, 1954.

We are unable to accept the construction contended for by petitioner. The plain meaning of the words of art. 4, § 9, permits no resort to extraneous interpretation, and leaves little doubt that the drafters of art. 4, § 9, in using the words "term of office" intended to embrace any changes in the length of term which might be effected by an amendment to art. 4, § 24. Even assuming that the amendment to art. 4, § 24, created an ambiguity in the meaning of the words "term of office" found in art. 4, § 9, that ambiguity has already been resolved against petitioner's contentions by prior decisions of this court.

In State ex rel. Childs v. Sutton, 63 Minn. 147, 65 N. W. 262, 30 L. R. A. 630, 56 A. S. R. 459, Sutton, a state representative elected for the present constitutional term of two years contended that by

resigning his legislative position before accepting another state office, he did not violate the first part of art. 4, § 9, which prohibits a legislator from holding an office under the authority of the state "during the time for which he is elected." In refuting the contention that Sutton's resignation terminated the time for which he was elected and holding that Sutton could not hold the office without violating art. 4, § 9, this court adopted the longer term of office prescribed by art. 4, § 24, following its amendment in 1877 in determining whether Sutton was disqualified (63 Minn. 151, 65 N. W. 263):

"* * * The time for which he was elected was the *entire constitutional term of two years,* and, whether he resigned during that time or not, he was not permitted to hold any other office under the authority of this state during such entire term." (Italics supplied.)

On two occasions this court has interpreted the precise language in art. 4, § 9, which is controlling here. In both cases the period of disqualification was computed by using the terms of office as they are now defined by art. 4, § 24, (representatives, two years; senators, four years) rather than the terms of office that were prescribed prior to the amendment of 1877 (representatives, one year; senators, two years). In State ex rel. Anderson v. Erickson, 180 Minn. 246, 230 N. W. 637, a state representative whose term began in January 1929 was held to be disqualified to hold an office, the emoluments of which had been increased at the 1929 session while he was a member of the legislature, until January 1932, one year following the expiration of his two-year term of office. In Miller v. Holm, 217 Minn. 166, 14 N. W. (2d) 99, a state senator elected to a four-year term beginning in January 1943 was held to be ineligible until January 1948 to hold the office of lieutenant governor, the emoluments of which had been increased during the 1943 session of the legislature of which he was a member, notwithstanding the fact that he had resigned from the office of state senator in May 1943. The secretary of state's refusal to receive his filing as a candidate for the nomination of lieutenant governor in the 1944 primary election was accordingly upheld.

It is suggested that the period of disqualification which results from this well-established construction of art. 4, § 9, constitutes an unreasonable hardship for members of the legislature during a session which merely increases the salary of state officers to levels in keeping with present-day standards of living. We need not express an opinion on this question. The wisdom of such a constitutional provision must be left to the consideration of the legislature which is charged with the responsibility of initiating constitutional change.

We therefore conclude that the secretary of state rightly refused to receive petitioner's filing as a candidate for the nomination for governor in the primary to be held September 14, 1954.

The order to show cause is discharged.