Ralph Moody HALL, Relator,

v.

Elmer C. BAUM, Chairman of the State Democratic Executive Committee, Respondent.

No. B–1956.

Supreme Court of Texas.

Feb. 16, 1970.

Appeal Dismissed Feb. 27, 1970.
See 90 S.Ct. 818.

Henry Akin, Jr., Mark Martin, Dallas, John L. Hill, W. James Kronzer, Houston, for relator.

Small, Herring, Craig, Werkenthin & Shannon, Charles Herring and Fred Werkenthin, Clark, Thomas, Harris, Denius & Winters, Donald S. Thomas, Austin, for respondent.

CALVERT, Chief Justice.

Sec. 18, Art. III, Constitution of Texas, Vernon's Ann.St., provides:

"No Senator or Representative shall, during the term for which he was elect-

ed, be eligible to (1) any civil office of profit under this State which shall have been created, or the emoluments of which have been increased, during such term, or (2) any office or place, the appointment to which may be made, in whole or in part, by either branch of the Legislature; * * *."

The question to be decided in this direct proceeding in this court is whether by virtue of the quoted constitutional provision State Senator Ralph Moody Hall is ineligible to the office of Governor for the two-year term beginning in January, 1971 and ending in January, 1973. We hold that he is.

Senator Hall was elected to a four-year term in the State Senate in November, 1968. For purposes of this decision, we will assume that his current Senate term will end on December 31, 1972. The salary of the office of Governor was $40,000 per annum for each of the fiscal years ending August 31, 1968 and 1969. The salary of the office for the fiscal years ending August 31, 1970 and 1971 was raised to $55,000 per annum at a special session of the Legislature held in August and September, 1969. The salary of the office of Governor was thus increased, during the term of office for which Senator Hall was elected, from the $80,000 paid during the preceding fiscal biennium to $110,000 for the current fiscal biennium. Once we concede that the office of Governor is a "civil office of profit under this State," as we must, Willis v. Potts, 377 S. W.2d 622 (Tex.Sup.1964), and that the salary of the office of Governor has been increased substantially during Senator Hall's current term of office, which it has, it would appear that a mere reading of Sec. 18, Art. III of the Constitution should end our search for an answer to our question. But relator insists, for various reasons, that the constitutional provision may not be interpreted to mean what it so plainly says. A matter of such serious import requires that the suggested reasons be considered and examined somewhat in depth.

This proceeding had its origin in the presentation to respondent, Elmer C. Baum, Chairman of the State Democratic Executive Committee, of relator's application for a place on the Democratic Party's May 2d Primary ballot as a candidate for the Party's nomination for the office of Governor. Chairman Baum refused to receive and file the application solely because he was advised by the Committee's legal counsel that the applicant was ineligible for the office of Governor. In refusing to receive and file the application, Chairman Baum acted in strict accordance with his statutory duty. Art. 1.05, Vernon's Texas Election Code, V.A.T.S.; Spears v. Davis, 398 S.W.2d 921, 922 (Tex.Sup.1966). Promptly thereafter, relator sought and obtained permission to file in this court a petition for writ of mandamus, directed to Chairman Baum and requiring that he accept and file relator's application. He is entitled to have the writ issue only if he is eligible for the office of Governor.

All possible side issues should be eliminated at the outset. Senator Hall possesses all of the qualifications—age, citizenship, etc.—required by the Constitution of the Governor of the State. His application was in statutory form and he tendered the required filing fee. He does not seek the office for personal economic gain. In participating in the vote in the August-September, 1969, special legislative session to increase the salary of the Governor, he did not cast his vote for reasons of personal gain or profit, nor was he guilty of wrongful conduct, connivance or impropriety in connection with his vote. In sum, relator's motives in participating in the vote by which the salary of the office of Governor was raised were of the highest order and in the interest of sound government.

Relator's reasons for contending that he is not rendered ineligible for the office of Governor by Sec. 18, Art. III of the Constitution are: (1) the provision was not intended to apply to the office of Governor when it was included in the Constitution of 1876, and subsequent amend-

ment of the Constitution does not make it apply; (2) the raise in the Governor's salary does not constitute an increase of the "emoluments" of the office; and (3) if held to render relator ineligible for the office, the provision is discriminatory and void as to him and others similarly situated because it denies to them equal protection of the laws as guaranteed by the Constitution of the United States. We will examine the contentions in the order in which they are listed. They will be examined with an awareness that constitutional and statutory provisions which restrict the right to hold public office "should be strictly construed against ineligibility." Willis v. Potts, 377 S.W.2d 622, 623 (Tex. Sup.1964).

Relator argues that inasmuch as the office of Governor was created by Sec. 1, Art. IV of the Constitution of 1876,[1] and the annual salary of the office was fixed by Sec. 5, Art. IV at "four thousand dollars and no more," the Legislature was powerless to create the office or to increase its emoluments; ergo, the proscriptions of Sec. 18, Art. III could not have been intended to apply to the office of Governor. The argument is not without a measure of logic; but to accept it would so limit the meaning of the broad phrase, "any[2] civil office of profit," as practically to denude it of meaning. If the proscriptions were not intended to apply to the office of Governor, neither were they intended to apply to the offices of Lieutenant Governor, Comptroller of Public Accounts, Secretary of State, Attorney General, Chief Justice or Associate Justice of the Supreme Court or District Judge, since each of these offices was also created in and by the Constitution and the salary of each was fixed therein at a stipulated amount.

The history of Sec. 18, Art. III simply will not support an interpretation which would remove practically all important state offices from the proscriptions and thus limit the phrase, "any civil office of profit," to local offices and minor state offices which might be created thereafter. As pointed out in a footnote to our opinion in Spears v. Davis, 398 S.W.2d 921, 923 (Tex.Sup.1966), the relevant language of Sec. 18, Art. III, with only slight and immaterial variations, was in our earliest constitutions, the Republic's Constitution of 1836 and the State Constitution of 1845. It was carried forward into the four subsequent state constitutions of 1861, 1866, 1869 and 1876. In all of the constitutions, except that of 1876, the Congress or Legislature, as the case might be, was authorized immediately or after a brief interval to increase the salary of the office of Governor beyond any sum set in the constitution. The salary as set in the Constitution of 1876 could not be increased by the Legislature without first amending the Constitution; but it seems to us more reasonable to say that the proscriptions of Sec. 18, Art. III, were intended to be operative to protect against that not unlikely event than that they were never intended to apply to any of the important state offices created in the Constitution. Amendment of the Constitution in 1954 to remove the ceilings on salaries of all of these officials and entrusting the fixing of such salaries, above certain minimum levels, to the discretion of the Legislature, served to bring all state offices within the active orbit of the proscriptions once again. And if there had been any doubt of that fact, the doubt was surely dispelled by adoption by the people in 1968 of an amendment to Sec. 18, Art. III, in which the relevant proscriptions of the section were once again made applicable to the office of Governor and the other constitutional offices.

■ We are even more strongly convinced that the increase in the salary of the office of Governor for the current fiscal biennium to $110,000 from $80,000 for

---

1. The full text of the Constitution of 1876 may be found in 8 GAMMEL, LAWS OF TEXAS 781–834.

2. Emphasis ours throughout unless otherwise indicated.

the preceding biennium is such an increase of emoluments as is contemplated by Sec. 18, Art. III. The increase monthly was $1250, and the increase was to exist and continue for a period of twenty-four months. We cannot regard this increase as insubstantial or insignificant. To the contrary, we hold the increase to be substantial as a matter of law. With this holding, we need not, and do not, decide whether Senator Hall would be ineligible if the increase had been purely formal, insubstantial and insignificant.

■ But relator argues that we should judge the character of the increase as substantial or insubstantial by the percentage of it which he would receive if elected Governor. This, he says, is because we held in Spears v. Davis, supra, 398 S.W.2d at 929, quoting from Shields v. Toronto, 16 Utah 2d 61, 395 P.2d 829, 833 (1964), that the purpose of Sec. 18, Art. III " * * * was to guard against dishonesty or improper connivance by or with legislators and to prevent them from being influenced by ulterior schemes to enrich themselves at the expense of the public treasury by creating or increasing the pay of a public office and then taking advantage of it. * * *" Relator then contends that inasmuch as, if elected, he would benefit by the salary increase for only some seven and one-half to eight months, and the amount involved is not such as to provoke him to dishonesty or to convict him of scheming to raise the salary for the purpose of enriching himself, the increase in salary should not be held to be an increase in the emoluments of the office as contemplated by the Constitution. We disagree with this argument; and we hold that the character of the increase of emoluments of office within the meaning of Sec. 18, Art. III, as substantial or insubstantial, is determined by the amount of the increase to the office and not by the part of the increase which would be paid to the one seeking the office.

If either of relator's first two contentions were sustained, our decision in Spears v. Davis, supra, that the increase in salary of the office of Attorney General did not render Senators Spears and Calhoun ineligible for that office because they were not seeking election to the office of Attorney General during the terms for which they were elected to the State Senate, was an exercise in futility and an idle gesture. Under relator's theory, they would not have been ineligible even if their Senate terms had overlapped that of the Attorney General.

We are not persuaded by relator's equal protection argument. The argument is that under our holding here and our prior decisions, members of the House of Representatives, all of whom have two-year terms which expire in November of even years, and fifteen or sixteen of the thirty-one Senators whose terms expire in November of even years before a new term of the Governor begins in the following January of odd years, are eligible for the office of Governor for such term even if the emoluments of the office have been increased for the term, while only the fifteen or sixteen holdover Senators are ineligible for the office of Governor. This, says relator, is rank discrimination, and a violation of constitutional equal protection.

■ Relator is not denied equal protection of the laws unless it can be shown that there is no reasonable basis for the classification made by the constitutional provision, and there is a presumption that the classification is reasonable. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393, 399 (1961). We are unwilling to hold that there is no reasonable basis for the classification.

■ If the Texas constitutional provision creates an unreasonable classification in the respect suggested by relator, so does the Constitution of the United States. The Twentieth Amendment to the Constitution of the United States provides that the two-year terms of the members of the House of Representatives, and the terms of those Senators whose six-year terms are

expiring, shall end on January 3rd before a new Presidential term begins on January 20th. The second paragraph of Sec. 6, Art. I of the Constitution of the United States provides:

"No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; * * *."

If the salary of the Secretary of Defense had been increased by Congress during a 1968 Congressional session, Congressman Melvin R. Laird, now Secretary of Defense, and all other 1968 members of the House of Representatives, as well as all Senators whose terms were expiring on January 3, 1969, would have been eligible for appointment by the incoming President to the office of Secretary of Defense, but those Senators whose terms were not expiring in January, 1969 would not have been eligible for such appointment. With a similar classification in the Constitution of the United States, we do not believe the classification provided by Sec. 18, Art. III, Constitution of Texas, violative of the Equal Protection Clause of the Fourteenth Amendment.

 In support of his various contentions, relator cites decisions of the Supreme Courts of Utah, Florida and South Dakota. See Shields v. Toronto, 16 Utah 2d 61, 395 P.2d 829 (1964); State ex rel. West v. Gray, 74 So.2d 114 (Fla.Sup. 1954); Adams v. Mathews, 156 So.2d 515 (Fla.Sup.1963), and State ex rel. Grigsby v. Ostroot, 75 S.D. 319, 64 N.W.2d 62 (1954). In the cited cases constitutional provisions similar to Sec. 18, Art. III, were interpreted in varying fact situations which we will notice briefly. It should be noted here, however, that the decisions of the courts of other states interpreting constitutional provisions similar to ours are, at best, only persuasive, and never stare decisis, of the meaning of our Constitution.

In Shields v. Toronto, the Utah court held that enactment of a general salary consolidation measure containing 5% across the board salary increase for all state officials, designated by the court as insubstantial, did not, under a similar constitutional provision, render incumbent legislators ineligible for election to the offices of Governor and Secretary of State. There was a strong dissent by the Chief Justice. We do not regard the decision as persuasive in this case because, as we have stated, we regard the increase of salary for the Governor's office as substantial.

The Florida cases present a strange anomaly. In 1947, the Supreme Court, in an unanimous decision in State ex rel. Fraser v. Gay, 158 Fla. 465, 28 So.2d 901, held under a similar constitutional provision that a State Senator was ineligible during his senatorial term for election to the office of State Comptroller for which office the salary had been increased during the Senator's term. The court went even further and held that the Senator's eligibility could not be saved by a general statutory provision that the salary of any office to which a legislator might be elected or appointed, if increased during his legislative term, should be the same as it was at the beginning of the legislative term. There was a spate of opinions in State ex rel. West v. Gray, supra. The majority of the court concluded that an increase in the salary of the Governor from $12,000 to $15,000, made during a Senator's term of office, did not render the Senator ineligible during such term for election to the office of Governor. The conclusion was rested on a holding that the increase was contained in a bill making appropriations for a two-year period, was purely temporary, was personal to the occupant of the office rather than attached to the office itself, and was not, therefore, an increase in the emoluments *of the office* of Governor. State ex rel. Fraser v. Gay was distinguished on the ground that the increase in that case was by statute and of a permanent nature rather than by appropriation bill and thus of a temporary char-

acter. Three of the Justices disagreed with that reasoning. In the later case of Adams v. Mathews, supra, in a situation said by the court to be identical with that in State ex rel. West v. Gray, the court held a Senator not to be ineligible to seek the office of Governor. The court noted in its opinion that three of the Justices who were not on the court when State ex rel. West v. Gray was decided did not agree with that decision but regarded it as stare decisis. Two Justices dissented. It thus appears that of the seven Justices on the Supreme Court of Florida in 1963, five regarded the 1954 decision in State ex rel. West v. Gray as unsound. We share the view that the State ex rel. West v. Gray decision is unsound; therefore, we decline to hold that the $55,000 salary in the instant case does not, because of its temporary character, represent an increase in the emoluments of the office of Governor.

In State ex rel. Grigsby v. Ostroot, supra, the Supreme Court of South Dakota held that the constitutional proscriptions were not intended to apply to constitutional offices which were elective, and thus that a legislator was not ineligible during his term to seek the office of Governor for which the salary had been increased. The conclusion was rested principally on a holding that originally salaries of all elective constitutional officers were fixed in power to increase such salaries. We have already dealt with this type argument in the light of our own different constitutional history.

In Miller v. Holm, 217 Minn. 166, 14 N. W.2d 99 (1944) and Dickinson v. Holm, 243 Minn. 34, 65 N.W.2d 654 (1954), the Supreme Court of Minnesota enforced similar constitutional proscriptions as written.

Our analysis of the cited cases from other jurisdictions indicates a total lack of unanimity of thought as to the wisdom of nullifying the constitutional proscriptions with which we are dealing, as well as a lack of unanimity of reasons for their nullification. The basic reason for refusing to nullify them is that the power to do so is not conferred upon the judiciary by the Constitution. If Sec. 18, Art. III, has outlived its usefulness and there is no longer need for the proscriptions there provided, as some of the courts of other states have indicated, the Constitution itself prescribes the remedy through a constitutional amendment submitted to and adopted by the people.

The petition for writ of mandamus is denied. A motion for rehearing will not be entertained.