Charles COATES et al., Appellants,

v.

James M. WINDHAM, Individually and as Chairman of the Texas Board of Corrections et al., Appellees.

No. 13434.

Court of Civil Appeals of Texas, Austin.

March 25, 1981.

Rehearing Denied April 8, 1981.

Karl C. Hoppess, Houston, Malcolm Greenstein, Greenstein & Kolker, Austin, John M. Fultz, Fultz & Davis, Navasota, for appellants.

Mark White, Atty. Gen., Jerry D. Cain, Asst. Atty. Gen., Austin, for appellees.

POWERS, Associate Justice.

Appellants sued appellees in district court to permanently enjoin appellees from actions aimed at the expenditure of State funds, appropriated by the Legislature for the purpose of paying the purchase price of lands intended to be used as the site of a State prison, operated by the Texas Department of Corrections.[1]

Ancillary to their petition for permanent injunction, appellants applied to the district court for a temporary injunction restraining the same actions, *pendente lite*, which injunction the district court denied. Appellants perfected an interlocutory appeal to this Court from the district court's order. We issued an injunction to preserve our jurisdiction pending a determination of the interlocutory appeal. *Charles Coates, et al.*

*v. James M. Windham, et al.*, No. 13,430 (Tex.Civ.App.—Austin, January 29, 1981) (not yet reported).

Having now considered the interlocutory appeal taken by appellants from the order of the district court denying their application for a temporary injunction, we affirm the order of the trial court and dissolve the injunction issued earlier by this Court.

In this appeal, appellants contend that the trial court abused its discretion, in denying their application for a temporary injunction, by failing properly to apply the law in the particulars discussed below. The appellants, we believe, have raised serious questions of law regarding (1) the validity of a rider to the 1979 general appropriations bill enacted by the Legislature, 1979 Tex. Gen.Laws, Ch. 843, Art. III at 2619, and (2) the validity of a meeting of the Texas Board of Corrections on November 10, 1980, where it was determined to purchase certain lands for the location of a prison. Appellants claim that the meeting should be declared void because of the insufficiency of the public notice given before the meeting was held and because the presiding officer at the meeting did not announce the applicable statutory authorization for excluding the public from that portion of the meeting where it was determined to purchase the lands in question. Texas Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17, §§ 3A, 2(a).

The rider in question authorized the Texas Department of Corrections to acquire "acreage for a prison site upon which to construct a prison unit." There has been $20,167,000.00 appropriated in the general appropriations bill for that purpose. The rider provided further that "[t]he acreage

---

[1]. The appellants are Charles Coates, Jean P. Bouliane, Clare Stanton, Richard Weaver, R. Jerry Falkner, William B. Hutson, Eddie Sullivan, III, Willie S. Baldobino, Jesus H. Reyes and Doris Parker. They are property owners and taxpayers residing in Grimes County, Texas. Some appellees were sued individually and in their official capacities. They are: James M. Windham, Chairman of the Texas Board of Corrections, T. Louis Austin, Jr., Joe V. LaMantia, Jr., Harry M. Whittington, Freeman B. Dunn, Clifford F. Smith, Jr., Ruben Montemayor, T. L. Roach, Jr., H. B. (Bartell) Zachry, Jr., and W. J. Estelle, Jr., all directors of the Texas Department of Corrections. William P. Clements, Jr., Bob Bullock and Bob Armstrong were sued individually. Appellants originally filed their suit in the 234th Judicial District of Harris County, Texas, from which it was transferred on a plea of privilege to the 261st District Court of Travis County, Texas. This appeal was taken, of course, from the latter court.

for a prison shall be acquired only when authorized by the Approval Board consisting of the Governor, the Commissioner of the General Land Office and the Chairman of the Board of Corrections." Appellants contend that this rider establishes an unconstitutional delegation of power by the Legislature, violates the principle of separation of powers enunciated in Article II, section 1 of the Texas Constitution, violates the principle of limited delegation of power by giving the Approval Board a veto power not authorized by Article IV, section 14 of the Texas Constitution, and violates the prohibition against including more than one subject in any given act, set forth in Article III, section 35 of the Texas Constitution. The delegation of power to the Approval Board, according to appellants' view, was made with no accompanying guidelines sufficient to retain in the Legislature the requisite degree of control over such Board's decision to approve or disapprove a purchase.

■ We do not believe that the language of the rider created an administrative agency or "office," but that it merely conferred upon the named public officers, *ex officio*, a limited and negative power of declining approval of any particular lands proposed to be acquired by the Department of Corrections. We interpret the phrase "when authorized" to mean "if approved," which seems to be consonant with the legislative intent. This limited view of the authority of the three officers constituting the Approval Board is, in our opinion, necessary to save the constitutionality of the rider and to bring the delegation of legislative power within the ambit of *Conley v. Daughters of the Republic,* 106 Tex. 80, 156 S.W. 197 (Tex.1913), where the Supreme Court of Texas approved a provision in the general appropriations bill which appropriated $5,000.00 to remodel the Alamo property, "to be expended under the direction of the Superintendent of Public Buildings and Grounds, upon the approval of the Governor."

■ We believe further that the Texas Board of Corrections, though vested with the "exclusive management and control" of the Texas Department of Corrections in matters pertaining to the operation and regulation of the department, has never been granted a similar exclusive and plenary power in matters pertaining to real property. Tex.Rev.Civ.Stat.Ann. arts. 6166g, 6166g–1. For example, in the matter of oil and gas development of prison lands, the power to grant exploration permits and the power to make mineral leases are vested in a board specially constituted for that purpose, comprised of the Commissioner of the General Land Office, one citizen appointed by the Governor, and the Chairman of the Texas Board of Corrections. Tex.Rev.Civ. Stat.Ann. arts. 6203a, 6203aa. Similarly, the power of the Texas Board of Corrections to construct medical facilities on the campus of the University of Texas Medical Branch at Galveston is shared with the Board of Regents of the University of Texas System, which must approve in writing the site, plans and specifications for any new facilities built on the campus by the Department of Corrections. Tex.Rev.Civ. Stat.Ann. art. 6203c–2. With these examples in mind, we do not believe that the rider in question impermissibly attempts to amend or replace an existing general law.

■ The Legislature has often retained a degree of control of public expenditures by means of similar riders in general appropriations bills. See, e. g., *Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593 (Tex.1976). The rider in the present case was an attempt by the Legislature to regulate the expenditure of the appropriated sum, in a limited and negative way. It did not, therefore, constitute an excessive degree of delegation so as to run afoul of the prohibition against two subjects being embraced by one bill, nor did it attempt to confer a veto power upon the Approval Board, akin to the veto power given the Governor in the Constitution. Tex.Const., art. III, § 35; art. IV, § 14. Had the rider in question conferred any affirmative powers or duties on the Board, or had the Legislature previously conferred upon the Texas Board of Corrections the exclusive power of acquir-

ing prison lands by purchase, we believe that we would be faced with an entirely different question. In this particular case, however, we believe that the Legislature, as part of its general contract power, has validly exercised its general power of deciding when, and under what conditions, prison lands may be purchased. See *Conley v. Daughters of the Republic, supra.*

It is true, as appellants contend, that the Governor would be exercising a legislative power in approving the purchase in question, a power not given him by the Constitution. Nevertheless, his approval power was severely limited and he could, under the rider, act only negatively; neither he, nor any other member of the Approval Board, was given any affirmative power. The amount authorized to be expended and the purpose of the purchase were clearly the dominant and essential parts of the legislative plan, which also placed the power of initiating the site selection process in the Texas Board of Corrections. The Governor and other members of the Approval Board had no control over this plan and could not vary it in any particular. No member of the Approval Board had any part in formulating the plan. It is not alleged that any member of the Approval Board is using his limited and negative power in a way to interfere with or frustrate the general plan and intent of the Legislature. We must presume that the members of the Board have acted lawfully. The Legislature could validly delegate approval power to the Board. *See*, generally, Annot. 91 A.L.R. 1511, *et seq.*

Appellants complain that the rider in question violates the constitutional principle contained in Article II, section 1 of the Constitution of Texas, which divides the powers of government into three depart-

ments, Executive, Legislative and Judicial. That provision also states that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others," except as expressly permitted by the Constitution. We believe that it is well settled that this constitutional prohibition states a *principle* of government and not a rigid classification as in a table of organization. This provision must be interpreted along with other constitutional provisions, and when this is done it is clear that the Constitution does three things: (1) it provides for three polar functions of government; (2) it delegates certain powers to each of the three departments in a distribution of all governmental powers; and (3) it blends legislative, executive and judicial powers in a great many cases.[2] The proper interpretation of Article II, section 1 is therefore dictated by its context. The proper interpretation is that this provision prohibits a transfer of a whole mass of powers from one department to another and it prohibits a person of one branch from exercising a power historically or inherently belonging to another department. It may not be interpreted in a way that prevents cooperation or coordination between two or more branches of government, hindering altogether any effective governmental action. It was designed, as were other checks and balances, to prevent excesses. *State Board of Insurance v. Betts*, 158 Tex. 83, 308 S.W.2d 846 (1958). We do not believe that the rider in question can be reasonably interpreted as "excessive" in its delegation of a limited and negative power to the Governor.

Appellants complain finally that the meeting of the Texas Board of Corrections held on November 10, 1980, violated the Texas Open Meetings Act in two respects:

---

2. For example, the Governor is given the legislative power of the veto; the Supreme Court of Texas is given the legislative power of promulgating rules of procedure; the Governor is given the judicial power of the pardon; the Courts of Civil Appeals are given the executive power of appointment in the case of their clerks; the Senate shares with the Governor a small part of the appointing power in consenting, or not, to the Governor's appointments; the Comptroller of Public Accounts, a member of the executive department, shares in the legislative process to the extent of furnishing the Governor and Legislature an itemized estimate of anticipated revenue, which ordinarily limits the amount of money the Legislature may appropriate for the operations of government, etc.

(1) in failing to provide a "notice" in substantial compliance with Section 3A of Article 6252–17 and (2) in the failure of the presiding officer at that meeting to announce the statutory justification for excluding the public from a part of the meeting, as required by Section 2(a) of the statute. We believe that the question is a close one in both respects.

■ Section 3A requires governmental bodies to give public notice, in writing, of the date, hour, place, and subject of each meeting held by such body. It then provides that "any action taken by a governmental body at a meeting on a subject which was not stated on the agenda in the notice posted for such meeting is voidable." If the notice given is insufficient, therefore, any action taken at the consequent meeting is voidable. Contrary to appellees' contention, local notoriety or newspaper publicity of the proceedings expected in a future meeting of a public body cannot supply the notice required by the Act, nor can it cure an insufficient notice.

■ The notice with which we are concerned in this case was very general, stating only that the Board would consider a "Report of Site Selection Committee." We believe that these words skirt the very edge of sufficiency but that the notice given thereby constitutes substantial compliance with the notice provisions of Section 3A and that it reasonably informed the public that the Board contemplated making a decision to purchase particular lands based upon the report of the Site Selection Committee.

Appellants concede that the Board could lawfully exclude the public from any of their deliberations concerning acquisitions of real property, as expressly authorized in Section 2(f) of the Open Meetings Act. They complain, however, that the presiding officer in this case did not announce to the meeting that the Board would rely on Section 2(f) in excluding the public from that part of the meeting. Section 2(a) of the Act provides that:

"[N]o closed or executive meeting or session of any governmental body for any of the purposes for which closed or executive meetings or sessions are hereinafter authorized shall be held unless the governmental body has first been convened in open meeting or session for which notice has been given as hereinafter provided and during which open meeting or session the presiding officer has publicly announced that a closed or executive meeting or session will be held and *identified the section or sections under this Act authorizing the holding of such closed or executive session*." (emphasis supplied).

■ Appellants contend that the action of the Board is voidable in this case under Section 3A, since the presiding officer did not identify the section authorizing a closed meeting as required by Section 2(a). The enforcement provision of Section 3A, however, applies only to a public body's failure to give sufficient notice of an intended meeting. It does not apply to the failure of a presiding officer to identify the section or sections of the Act which authorize a closed or executive session in a particular case. We need not decide, in this case, whether any of the other enforcement provisions of the Texas Open Meetings Act would be applicable to his omission.

We affirm the judgment of the trial court.

Affirmed.