George W. STRAKE, Jr., Chairman of
the State Republican Executive
Committee, Relator,

v.

The COURT OF APPEALS FOR the
FIRST SUPREME JUDICIAL
DISTRICT OF TEXAS, Respondent.

No. C–5004.

Supreme Court of Texas.

Feb. 26, 1986.

Leonard Davis, Potter, Guinn, Minton, Roberts & Davis, Tyler, for relator.

Jim Mattox, Atty. Gen., Robert L. Lemens, Office of Atty. Gen., Austin, Robert L. Blumenthal, Tex Lezar, Carrington, Coleman, Sloman & Blumenthal, Dallas, Ed Walsh, Round Rock, for respondent.

WALLACE, Justice.

Relator George W. Strake, Jr., Chairman of the State Republican Executive Committee refused to accept the application of Senator J.E. "Buster" Brown as a candidate in the 1986 Republican Primary for the Office of Attorney General of Texas for a four-year term commencing January 1, 1987. The Court of Appeals for the First Supreme Judicial District of Texas, in response to a petition filed by Senator Brown, issued a conditional writ of mandamus ordering that Strake certify Senator Brown as a candidate for the office sought. Strake has petitioned this court to issue a writ of mandamus directing the court of appeals to vacate its writ. We conditionally grant the requested writ.

■ Senator Brown first contends that this court has no jurisdiction to issue a writ of mandamus to the court of appeals. He cites a number of opinions of this court as authority. We note that all of those cases cited were issued prior to the 1983 amendment of TEX.REV.CIV.STAT.ANN. art. 1824, now codified as TEXAS GOV'T CODE ANN. § 22.221(b) (Vernon 1985), which gives the courts of appeals concurrent jurisdiction with this court to issue the writ of mandamus. We settled this contention adversely to Senator Brown in *Peeples v. Fourth Supreme Judicial District,* 701 S.W.2d 635 (Tex.1985), and *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916 (Tex.1985). The test set out in *Johnson* is applicable to this case. Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. 700 S.W.2d at 917.

■ In a case involving a public officer over which the court of appeals has mandamus power, that court makes an independent inquiry whether the act, or refusal to act, of the public officer is contrary to a clearly established legal duty. If so, the reviewing court will issue the writ. In reviewing by writ of mandamus the action of a court of appeals our focus remains on the point of origin of the case, in this case the action of Chairman Strake in denying Senator Brown's application. We first determine if the action at the point of origin was proper. If we find it to be proper and the court of appeals has held otherwise, it has thus abused its discretion and we will grant the writ of mandamus directing the court of appeals to set aside its writ of mandamus. This court will closely scrutinize questions of constitutionality decided by the courts below.

Senator Brown is a member of the 69th Legislature. He was elected November 6, 1984, for a four-year term.

The Texas Constitution, article III, § 18 provides:

No Senator or Representative shall, during the term for which he was elected, be eligible to ... any civil office of profit under this State which shall have been created, or the emoluments of which may have been increased, during such term,....

The 69th Legislature passed a General Appropriations Act, House Bill 20, in 1985. Article 5, § 94 of that Act provides:

If a member of the 69th Legislature is elected to a civil office of profit under this state, the emoluments of which are established under this Act, then effective on the first day of the term of the civil office to which the member is elected, the emoluments of the office are reduced to a level equal to the level of emoluments in effect on January 1, 1985.

General Appropriations Act, ch. 980, art. 5, § 94, 1985 Tex.Sess. Law Serv. 7284, 7797 (Vernon). That same Act provides:

Agencies having a "SCHEDULE OF EXEMPT POSITIONS" following their appropriation may expend funds to employ those positions designated as ex-

empt at the rate of 103% of the rate shown for fiscal year 1986 and 103% of the adjusted 1986 rate for fiscal year 1987.

General Appropriations Act, ch. 980, art. 5, § 2(b), 1985 Tex. Sess. Law Serv. 7284, 7758 (Vernon). The current Attorney General is receiving compensation at the increased rate provided by the above provisions. All state employees received the same three per cent increase in pay.

█ The first issue is whether the three per cent per year increase in pay is an increase in emoluments of the Office of Attorney General. Webster's World Dictionary (1982) defines emoluments as the result of exertion; gain or profit; gain from employment or position; payment received for work; salary; wages; fees. Senator Brown contends that a three per cent per annum across the board increase for all state employees is not an increase in emoluments as contemplated by the constitution. Senator Brown bases his contention on the fact that the three per cent per annum increase is less than the rate of inflation. It must be noted that the increase in the emoluments of Office of Attorney General is three per cent per year which is equal to a six per cent increase over the biennium covered by the General Appropriations Act. The 69th Legislature was obviously of the opinion that the three per cent was an increase when considered from the constitutional perspective, else it would not have attached § 94 to the General Appropriations Act in an attempt to avoid the prohibitions contained in the constitution.

The next premise of Senator Brown's argument is that the constitutional prohibition does not include an insubstantial increase. This is tantamount to an argument that the constitutional provision is ambiguous. If there is no ambiguity there is no room to consider whether the increase is substantial or insubstantial; an unambiguous provision is given its literal meaning.

The constitution makes no distinction between a small increase in emoluments and a large one, between an insubstantial increase and a substantial one. It clearly prohibits the designated legislators from holding an office the emoluments of which are increased. Had the framers of the constitution not intended to include all increases, they would surely have said so. We hold that the three per cent per annum increase in salary for the Attorney General is an increase in emoluments of that office.

█ The next issue is whether article 5, § 94 of the General Appropriations Act is sufficient to nullify the three per cent per annum increase as to Senator Brown, should he be elected. The constitution states:

No Senator ... shall ... be eligible to any civil office ... the emoluments of which may have been increased....

TEX. CONST. art III, § 18. As noted above, the emoluments of the office have been increased and the present Attorney General is receiving those increased emoluments. The fallacy in the legislative attempt to void the prohibition of the constitution is the attempt to make an appropriation to an office dependent upon the person who holds that office. In so doing the Legislature has attempted to include a general law within an appropriations act. This violates the Unity-in-Subject Clause of the Texas Constitution, article III, § 35 which states:

No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, ....

This Unity-in-Subject Clause has been construed to mean that appropriations is a single subject and that any rider to an appropriations bill must relate to the appropriation of funds. Any rider dealing with a different subject is general legislation and prohibited by the Unity-in-Subject Clause. See *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593, 600–01 (Tex.1975); *Moore v. Sheppard*, 192 S.W.2d 559, 561–62 (Tex. 1946). A rider which attempts to alter existing substantive law is a general law which may not be included in an appropriations act. A comparison of the wording of

the rider with article III, § 18 of the constitution indicates an intent that § 94 of the Appropriations Act nullify the constitutional prohibition. The rider is thus contrary to the constitution and is void.

We conditionally issue the writ of mandamus directing the Court of Appeals for the First Supreme Judicial District of Texas to vacate its conditional writ of mandamus directing Chairman George W. Strake, Jr. to certify Senator J.E. "Buster" Brown as an eligible candidate in the Republican primary for the Office of Attorney General. The writ of mandamus will issue only should the court of appeals fail to vacate its writ.

GONZALEZ, J., files a dissenting opinion in which CAMPBELL and SPEARS, JJ., join.

GONZALEZ, Justice, dissenting.

I agree with the majority that this court has jurisdiction of this cause. However, I strongly dissent on the merits of this case. I would hold that a three percent across-the-board cost of living increase for all state employees does not amount to an increase in the "emoluments of office" for the attorney general. I would further hold that Senator Brown is eligible to run for Attorney General and would let the voters of this state decide his fate.

## JURISDICTION

I agree with the majority's conclusion that this court has jurisdiction to review, in a mandamus context, the ruling of the court of appeals on this constitutional question. Both the courts of appeals and the supreme court have concurrent jurisdiction to issue the extraordinary writ of mandamus against the officers of political parties to compel the performance of ministerial duties associated with the holding of an election. *See* TEX. GOV'T. CODE ANN. §§ 22.002(d) and 22.221(c) (Vernon 1986); *see also* TEX. ELEC. CODE ANN. § 273.-061 (Vernon 1986). Additionally, this court has the authority to issue a writ of mandamus to correct a court of appeals' ruling on a pure question of law. *See Chojnacki v.*

*First Court of Appeals,* 699 S.W.2d 193 (Tex.1985).

## MERITS

The constitutional provision on emoluments was obviously intended to prohibit a member of the Legislature from personally benefitting by an increase in the salary or other compensation of an office he later seeks. The majority's interpretation of the constitutional provision may conform to the letter of the prohibition, but it is at odds with the underlying purpose and the spirit of the constitutional provision.

A three percent across-the-board raise to all state employees is not an increase in emoluments of a civil office which offends article III, § 18 of the constitution. The only other Texas case to mention whether a raise was an increase in emoluments under article III, § 18 is *Hall v. Baum,* 452 S.W.2d 699 (Tex.1970). In *Hall,* this court, as a matter of law, held that a 37.5 percent increase in pay of a specific office was not insubstantial or insignificant as a matter of law. This court did not hold that *any* increase would be substantial. To the contrary, we discussed how the court would make a determination as to whether an increase is substantial or significant. This case is clearly distinguishable from *Hall.* A 37.5 percent increase to a particular office is totally different from a three percent raise to all employees.

In *Spears v. Davis,* 398 S.W.2d 921 (Tex. 1966), another case involving article III, § 18, this court quoted with approval from *Shields v. Toronto,* 395 P.2d 829 (Utah 1964). In *Shields,* the Utah Supreme Court was faced with a question similar to the one before this court. Relators were members of the Legislature who wanted to become candidates for secretary of state and governor of the state of Utah. As legislators, they enacted a general salary increase for all state officers. Addressing an identical constitutional provision, the Utah court held the purpose of the provision is "to guard against dishonesty or improper connivance by or with legislators and to pre-

vent them from being influenced by ulterior schemes to enrich themselves at the expense of the public treasury...." *Id.* at 830. The court further noted that when adequate safeguards are observed "there is no good reason to carry this provision beyond that purpose and make an unreasoning applicationof it where no such evil nor any possibility of it exists." *Id.*

The *Shields* court held that the five percent raise for all state officers "cannot by any stretch of the imagination" be regarded as falling within the impropriety to be guarded against. The court also noted that the increases were not directed toward any particular office, the raise was only five percent, and a moderate cost of living adjustment. The court observed that any other holding would interfere with the right to vote for a candidate of one's choice and impede the Legislature's right to raise salaries.

I agree with the reasoning of the *Shields* court. No worthy objective or policy is served by holding Brown ineligible in this case because of a three percent increase to *all* state employees. I would not apply this provision to Brown when there has not been any contention of impropriety and none can be implied.

Basic policy concerns clearly dictate against the majority's result. If the Texas Legislature implements an across-the-board salary increase, which is then considered an increase in emoluments of office, no legislator with an overlapping term will be eligible to run for any State office other than the one he currently holds. Because of this court's holding, any legislator interested in running for any other state office will be forced to refrain from voting for a statewide pay increase. I doubt that the framers of our constitution intended such a result.

I also disagree with that portion of the majority's opinion which holds that the rider (article 5, § 94) to the appropriations act is ineffective to avoid the constitution's proscription on increases in the emoluments of office.

This court has observed that,

[i]n passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere-difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable.

*Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968). More importantly, the law is well established that any constitutional or statutory provision which restricts the right to seek public office should be construed *against ineligibility. See Hall v. Baum*, 452 S.W.2d at 702; *Willis v. Potts*, 377 S.W.2d 622, 623 (Tex.1964). Thus, article 5, § 94 has a doubly strong presumption in favor of its constitutionality.

Clearly, the burden is upon the party attacking the constitutionality of an act of the Legislature. *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex.1974). Strake, then, has the burden of showing that a specific constitutional provision inhibits the legislation, or that such inhibition is clearly implied. *Texas Public Bldg. Authority v. Mattox*, 686 S.W.2d 924, 927 (Tex.1985); *Shepherd v. San Jacinto Junior College Dist.*, 363 S.W.2d 742, 743 (Tex.1962). Thus, we must determine if article 5, § 94 violates Tex. Const. art. III, § 35—the Unity-in-Subject Clause.

The very terms of the Unity-in-Subject Clause expressly exclude general appropriations bills of the variety involved herein. The majority relies on *Moore v. Shepherd*, 144 Tex. 537, 192 S.W.2d 559 (1946) for the proposition that the Unity-in-Subject Clause applies. In *Moore*, this court held unconstitutional under the Unity-in-Subject Clause a rider to an appropriations bill which directed the clerks of the various courts of civil appeals to deposit fees for furnishing unofficial, uncertified copies of court records into the state treasury. This court observed that the charging of such fees and the deposit thereof in the state treasury were *not* subjects properly included in an appropriations act.

Unlike *Moore*, the present case involves a rider which makes conditional the very appropriations which are the subject of the act. Thus, article 5, § 94, the appropriations rider, does not, as in *Moore*, deal with a subject alien to the appropriations act.

The majority also relies on *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593 (Tex. 1975), where we upheld, against a constitutional unity-in-subject challenge, an appropriations act rider which granted a college board of regents the authority to *expend funds* on certain projects without prior approval of the Coordinating Board. In *Jessen*, we stated that "[i]n determining whether a bill includes more than one subject, both the constitutional provision and the statute under consideration are to be liberally construed in favor of constitutionality." *Id.* at 600. The majority's interpretation of the Unity-in-Subject Clause is inconsistent with both the holding and language of *Jessen* and with the policy concerns underlying the proscription of senatorial eligibility for civil offices for which the level of remuneration has been increased. At least one commentator has suggested that an appropriations rider such as the one involved herein does not run afoul of article III, § 18 of our State Constitution. *See* TEX. CONST. art. III, § 18, interp. commentary (Vernon 1984). The majority's opinion simply fails to explain why it does not apply the rule of *Jessen* to the statutory provision in question.

I would deny this writ of mandamus.

CAMPBELL and SPEARS, JJ., join in this dissent.