OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 27, 2001

The Honorable Clyde Alexander
Chair, Committee on Transportation
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0448

Re: Validity of a rider to the general appropriations act requiring the Texas Department of Transportation to sign an agreement with the City of El Paso in order to expend funds to build a border inspection station (RQ-0419-JC)

Dear Representative Alexander:

You inquire about the validity of a rider in the 2001 General Appropriations Act. Rider 63, attached to the appropriation to the Texas Department of Transportation, attempts to amend a general law in violation of article III, section 35 of the Texas Constitution, and it is therefore invalid.

The rider you inquire about relates to certain border inspection stations to be established by the Texas Department of Transportation (the "Department").[1] *See* General Appropriations Act, 77th Leg., R.S., S.B. 1, art. VII-36, *available at* Legislative Reference Library, *and at* http://www.lbb.state.tx.us. The rider provides that "[i]t is the intent of the Legislature that before funds are expended" for building such a facility, the Department and the governing board of the municipality in which the facility is to be located must agree on the location, plans, and implementation strategy for the facility. *Id.*

You state that this rider is relevant to a controversy concerning the opening of a temporary inspection station for commercial vehicles in El Paso. The Department is required to establish and maintain border inspection stations, *see* TEX. TRANSP. CODE ANN. § 201.613 (Vernon Supp. 2002), while the Department of Public Safety is responsible for the inspection program for commercial motor vehicles, *id.* § 548.201. It has been suggested that these agencies have not complied with the rider. Request Letter, *supra* note 1. Accordingly, you ask whether the rider is valid.

The legislature may not include a general law in a general appropriations act, because such action would violate article III, section 35 of the Texas Constitution. *See Strake v. Court of Appeals,*

---

[1]Letter from Honorable Clyde Alexander, Chair, House Committee on Transportation, to Honorable John Cornyn, Texas Attorney General (Aug. 15, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

704 S.W.2d 746, 748 (Tex. 1986). Article III, section 35 states in part that "[n]o bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject." TEX. CONST. art. III, § 35(a). This provision has been construed to mean that the appropriation of funds from the state treasury is a single subject and that any rider to an appropriations bill must relate to the appropriation of funds. *Strake*, 704 S.W.2d at 748; *see Jessen Assoc., Inc. v. Bullock*, 531 S.W.2d 593, 600 (Tex. 1975); *Moore v. Sheppard*, 192 S.W.2d 559, 561 (Tex. 1946) (general appropriation bill is limited to the subject of appropriations). A rider that attempts to alter existing substantive law is a general law that may not be included in an appropriations act. *Strake*, 704 S.W.2d at 748. Thus, a general law may not be adopted by a rider, *Moore*, 192 S.W.2d at 561, and a rider may not repeal, modify, or amend an existing general law. *See id.; Linden v. Finley*, 49 S.W. 578 (Tex. 1899); Tex. Att'y Gen. Op. Nos. MW-585 (1982), MW-51 (1979), V-1254 (1951).

A rider may detail, limit, or restrict the use of appropriated funds. Tex. Att'y Gen. Op. Nos. JC-0178 (2000) at 3, JM-1151 (1990) at 5, V-1254 (1951) at 8, V-1253 (1951) at 4. A rider that merely directs the use of appropriated funds or is incidental to an appropriation is valid, because it relates to the appropriation of funds. *See Strake*, 704 S.W.2d at 748; *Jessen Assoc., Inc.*, 531 S.W.2d at 599-600. Merely phrasing a rider as a restriction on the use of appropriated funds does not necessarily make it a valid rider. Tex. Att'y Gen. LO-96-079, at 3. A rider stating that "[n]one of the funds appropriated to" an entity may be expended unless some condition is fulfilled still may be an invalid attempt to amend general law. *See* Tex. Att'y Gen. Op. Nos. DM-81 (1992), M-1199 (1972) (holding invalid various riders phrased as restrictions on use of appropriated funds). More important than the formulation of the rider is the breadth or narrowness of its effect, and whether or not it conflicts with general law. *See Strake*, 704 S.W.2d at 748-49; Tex. Att'y Gen. LO-96-079, at 2-3.

Numerous opinions of this office have addressed riders that attempt to amend general laws and have determined that such riders are invalid under article III, section 35 of the Texas Constitution. Attorney General Opinion JC-0178 considered the validity of a rider adding a requirement to the statutory formula for distributing funds for emergency medical services. We determined that the rider attempted to amend general law and therefore contravened article III, section 35 of the Texas Constitution. Tex. Att'y Gen. Op. No. JC-0178 (2000) at 3. In Attorney General Opinion DM-116, a rider directing the Texas Department of Aging to use the "service standards, systems, billing and audit procedures, and provider bases used by the Department of Human Services" was determined to constitute general law and was therefore violative of Texas Constitution, article III, section 35. Tex. Att'y Gen. Op. No. DM-116 (1992) at 2. A rider that attempted to transfer the operations and responsibilities of the State Rural Medical Education Board to the Coordinating Board, Texas College and University System was found unconstitutional in Attorney General Opinion JM-1018. The rider was "a general directive in derogation of the constitutional and statutory directive concerning the affairs of the Rural Medical Education Board." Thus, it constituted unconstitutional general legislation limiting the powers of the Rural Medical Education Board. Tex. Att'y Gen. Op. No. JM-1018 (1989) at 2. A rider expressing the legislature's intent that "an interagency contract . . . be executed between the State Board of Barber Examiners

and the Texas Cosmetology Commission to reduce duplication of activities," General Appropriations Act, 67th Leg., ch. 875, art. I, 1981 Tex. Gen. Laws 3376, attempted to enact general legislation within an appropriations act and therefore violated article III, section 35 of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. MW-585 (1982).

We will evaluate Rider 63 according to the standards set out in case law and applied in the opinions of this office. This rider provides as follows:

> **Border Inspection Facilities.** It is the intent of the Legislature that before funds are expended for the purpose of building a co-located facility which would serve as a commercial motor vehicle inspection facility, border inspection station, or a centralized border inspection station that the department sign an agreement with the governing board of the municipality in which the facility is to be located which states that the location, plans, and implementation strategy for the proposed facility are acceptable to all parties involved.

General Appropriations Act, 77th Leg., R.S., S.B. 1, art. VII-36, *available at* Legislative Reference Library, *and at* http://www.lbb.state.tx.us. "Collocate" means "[t]o place side by side, or in some relation to each other." III OXFORD ENGLISH DICTIONARY 487 (2d ed. 1989). Depending on context, it may mean "to locate in the same building or part of a building." *See* TEX. GOV'T CODE ANN. § 2165.1061 (Vernon 2000) (collocation of state agency administrative office space).

The border inspection facilities that are the subject of Rider 63 are also addressed by section 201.613 of the Transportation Code, which requires the Department to establish and maintain border inspection facilities in three cities. This provision was adopted in 1999 as Senate Bill 913. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1527, § 1, 1999 Tex. Gen. Laws 5254. Its purpose was to help expedite the flow of traffic through the Texas-Mexico border, which had increased greatly after the North American Free Trade Agreement was adopted. *See* SENATE COMM. ON BORDER AFFAIRS, BILL ANALYSIS, Tex. S.B. 913, 76th Leg., R.S. (1999). Senate Bill 913 required the Department "to establish and maintain an inspection station in Brownsville, in Laredo, and in El Paso along a major highway at or near a border crossing from Mexico so that all federal, state, and municipal agencies that regulate the passage of commercial motor vehicles could be located in one place." FISCAL NOTE, Tex. S.B. 913, 76th Leg., R.S. (1999). Section 201.613 of the Transportation Code provides as follows:

> (a) The department shall choose a location for an inspection station along a major highway at or near a border crossing from Mexico in Brownsville, in Laredo, and in El Paso so that all federal, state, and municipal agencies that regulate the passage of persons or vehicles across the border at that border crossing may be located in one place.

> (b) The department shall establish and maintain an inspection station at the locations chosen in Subsection (a) only if the federal agencies involved in the regulation of the passage of persons or vehicles at that border crossing agree to the design of the facility at each location and agree to use the facility at each location if built.

> (c) The department may enter into agreements with federal, state, and municipal agencies to accomplish the purpose of this section. An agreement may involve the lease of office space at the inspection station by the department to the agency.

TEX. TRANSP. CODE ANN. § 201.613 (Vernon Supp. 2002). We understand that an inspection station for commercial vehicles has been opened in El Paso,[2] where the Texas Department of Public Safety is inspecting trucks on the Department of Transportation's right-of-way, but that no building has yet been constructed at that site.[3]

Section 201.613 of the Transportation Code authorizes the Department to choose the locations for the inspection stations. Rider 63, however, would make the construction of a facility at the location chosen by the Department contingent upon its securing the municipality's written agreement that "the location, plans, and implementation strategy for the proposed facility are acceptable to all parties involved." *See* General Appropriations Act, 77th Leg., R.S., S.B. 1, art. VII-36, *available at* Legislative Reference Library, *and at* http://www.lbb.state.tx.us. The rider thus attempts to curtail the Department's authority under section 201.613 of the Transportation Code to choose the location for an inspection station or stations in each of the three cities. Section 201.613 provides that the Department "shall establish and maintain an inspection station at the locations chosen in Subsection (a)" only if certain federal agencies agree to the design of the facility at each location and agree to use it if built, but nothing in that statute requires the Department to secure the municipality's agreement to "the location, plans, and implementation strategy for the proposed facility." *Id.* Accordingly, Rider 63 attempts to amend substantive law in violation of article III, section 35 of the Texas Constitution.

A brief submitted to us argues, however, that Rider 63 is not an impermissible modification of section 201.613(a) of the Transportation Code.[4] It asserts that "nothing in [section] 201.613 states or implies that TxDOT's [the Department's] decisions cannot be encumbered" and cites *Coates v. Windham*, 613 S.W.2d 572, 575 (Tex. Civ. App.–Austin 1981, no writ), as authority for this

---

[2]*See* Request Letter, *supra* note 1.

[3]*See* Letter from Honorable Joseph C. Pickett, Texas State Representative, to Major Coy Clanton, Texas Department of Public Safety (July 31, 2001), attached to Brief from Representative Pickett to, Susan Gusky, Chair, Opinion Committee (Aug. 29, 2001) (on file with Opinion Committee).

[4]Brief from Mr. Paul N. Wageman, Winstead, Sechrest & Minick, on behalf of Fasken Oil and Ranch, Ltd., to Susan Gusky, Chair, Opinion Committee at 2 (Oct. 8, 2001) (on file with Opinion Committee).

statement.[5] In our opinion, the rider addressed in *Coates v. Windham* may be distinguished from Rider 63. In *Coates v. Windham*, the court addressed the validity of the following rider to an appropriation to the Department of Corrections:

> The Department of Corrections is authorized to acquire from the proceeds of the sale of properties, and/or the exchange of properties, and/or from the appropriation for prison construction, acreage for a prison site upon which to construct a prison unit. *The acreage for a prison site shall be acquired only when authorized by the Approval Board consisting of the Governor, the Commissioner of the General Land Office, and the Chairman of the Board of Corrections.*

General Appropriations Act, 66th Leg., R.S., ch. 843, art. III, 1979 Tex. Gen. Laws 2445, 2625 (emphasis added).

The italicized language in the rider was challenged as violative of article III, section 35 of the Texas Constitution. The court stated that the rider was an attempt by the legislature to regulate the expenditure of the appropriated sum "in a limited and negative way" and it "did not, therefore, constitute an excessive degree of delegation so as to run afoul of the prohibition against two subjects being embraced by one bill, nor did it attempt to confer a veto power on the Approval Board." *Coates*, 613 S.W.2d at 575. Although the Texas Board of Corrections had "exclusive management and control" of matters pertaining to the management and operation of the Department of Corrections, the legislature had never granted the board an "exclusive and plenary power" in matters pertaining to real property. *Id.* at 575-76. The court determined that the rider did not impermissibly attempt to amend or replace an existing general law, but it also stated as follows: "Had the rider in question conferred any affirmative powers or duties on the Board, or had the Legislature previously conferred upon the Texas Board of Corrections the exclusive power of acquiring prison lands by purchase, we believe that we would be faced with an entirely different question." *Id.*; *see also* Tex. Att'y Gen. LO-96-079, at 2-3.

Rider 63 presents "an entirely different question" because, unlike the general law at issue in *Coates v. Windham*, section 201.613 of the Transportation Code confers upon the Department the power to choose the location of an inspection station, without seeking the agreement of the city in which the inspection station is to be located. Accordingly, Rider 63 attempts to amend general law and is therefore invalid and of no effect.

---

[5]*Id.* at 3.

## S U M M A R Y

Rider 63 to the appropriation to the Texas Department of Transportation in the 2001 General Appropriations Act is invalid because it attempts to amend a statute in violation of article III, section 35 of the Texas Constitution. Section 201.613 of the Transportation Code provides that the Department of Transportation shall choose a location for an inspection station in three named cities and does not require the city to agree to the choice of location. Rider 63 provides that appropriated funds may not be spent on the inspection station unless the Department secures the city's written agreement that the location, plans, and implementation strategy for the proposed facility are acceptable to all parties involved. Because the rider attempts to amend section 201.613 of the Transportation Code, it is invalid.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee