

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 5, 2004

Mr. Michael W. Behrens, P.E.
Executive Director
Texas Department of Transportation
125 East 11th Street
Austin, Texas 78701-2483

Opinion No. GA-0143

Re: Whether proceeds from the sale of an agency's salvage or surplus personal property, originally purchased with revenues constitutionally dedicated to highway purposes, may be placed in the state's general revenue fund   (RQ-0082-GA)

Dear Mr. Behrens:

On behalf of the Texas Department of Transportation ("TxDOT"), you ask whether revenue derived from selling TxDOT personal property purchased with revenues constitutionally dedicated to highway purposes, may be placed in the general revenue fund under Government Code section 2175.134(a), as amended in 2003, and whether the amendment to this provision was improperly implemented before it became law.[1]

Government Code chapter 2175 governs the sale of a state agency's salvage or surplus property. Under the chapter, salvage property is personal property with no value for the purpose for which it was originally intended. TEX. GOV'T CODE ANN. § 2175.001(3) (Vernon Supp. 2004). Surplus property may be new or used personal property that exceeds the agency's needs. *Id.* § 2175.001(4). Section 2175.134(a) formerly provided that proceeds from the sale of a state agency's surplus and salvage property were to be "deposited to the credit of the appropriate appropriation item of the state agency for which the sale was made." *See* Act of May 24, 2001, 77th Leg., R.S., ch. 816, § 1, 2001 Tex. Gen. Laws 1601, 1603 (codified as TEX. GOV'T CODE ANN. § 2175.134 and other sections of chapter 2175), Act of May 13, 1947, 50th Leg., R.S., ch. 289, § 1, 1947 Tex. Gen. Laws 492, 493 (amending surplus property statute to allocate proceeds of sale to fund or account from which property was purchased) (former TEX. REV. CIV. STAT. ANN. art. 666 (Vernon 1925)). After recent amendment, section 2175.134 now provides that such sale proceeds "shall be deposited to the credit of the general revenue fund of the state treasury." *See* Act of June 1, 2003, 78th Leg., R.S., ch. 309, § 7.29, 2003 Tex. Gen. Laws 1295, 1304-05 (amending TEX. GOV'T CODE ANN. § 2175.134(a)). You ask whether the amendment is constitutional as applied to TxDOT personal property purchased with the revenues that the Texas Constitution dedicates to highway construction,

---

[1]Letter from Michael W. Behrens, P.E., Executive Director, Texas Department of Transportation, to Honorable Greg Abbott, Texas Attorney General (July 23, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

maintenance, and related purposes. *See* Request Letter, *supra* note 1; TEX. CONST. art. VIII, §§ 7–a, 7–b. You do not contend that the amendment is unconstitutional in any other respect. *See* Request Letter, *supra* note 1.

Texas Constitution article VIII, section 7–a, adopted in 1946, dedicates to highway purposes the net revenues "derived from" motor vehicle registration fees, and certain taxes on motor vehicle fuels and lubricants. *See* TEX. CONST. art. VIII, § 7–a.[2] The constitutionally dedicated revenues "shall be used for the sole purpose of acquiring rights-of-way, constructing, maintaining, and policing such public roadways, and for the administration of such laws as may be prescribed by the Legislature pertaining to the supervision of traffic and safety on such roads." *Id.* The constitution also dedicates federal revenues that reimburse the state for expenditures of funds "that are themselves dedicated for acquiring rights-of-way and constructing, maintaining, and policing public roadways." *See id.* § 7–b; TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS 15-16 (1988).

You assert that "[t]he vast majority of the state highway fund . . . has been funded with constitutionally dedicated revenues," and that "the vast majority of personal property purchased by TxDOT for use in connection with the constitutionally mandated purposes" has been funded with constitutionally dedicated revenues.[3] When TxDOT property purchased with constitutionally dedicated funds is sold, you believe that the proceeds should be placed in the highway fund and that placing the proceeds in the general revenue fund diverts constitutionally dedicated funds, contrary to Texas Constitution article VIII, section 7. *See* TxDOT Brief, *supra* note 3. This section provides that "[t]he Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury." TEX. CONST. art. VIII, § 7. Money

---

[2]Article VIII, § 7–a provides

Subject to legislative appropriation, allocation and direction, all net revenues remaining after payment of all refunds allowed by law and expenses of collection derived from motor vehicle registration fees, and all taxes, except gross production and ad valorem taxes, on motor fuels and lubricants used to propel motor vehicles over public roadways, shall be used for the sole purpose of acquiring rights-of-way, constructing, maintaining, and policing such public roadways, and for the administration of such laws as may be prescribed by the Legislature pertaining to the supervision of traffic and safety on such roads; and for the payment of the principal and interest on county and road district bonds or warrants voted or issued prior to January 2, 1939, and declared eligible prior to January 2, 1945, for payment out of the County and Road District Highway Fund under existing law; provided, however, that one-fourth (1/4) of such net revenue from the motor fuel tax shall be allocated to the Available School Fund; and, provided, however, that the net revenue derived by counties from motor vehicle registration fees shall never be less than the maximum amounts allowed to be retained by each County and the percentage allowed to be retained by each County under the laws in effect on January 1, 1945. Nothing contained herein shall be construed as authorizing the pledging of the State's credit for any purpose.

TEX. CONST. art VIII, § 7–a.

[3]*See* Brief from Richard Monroe, General Counsel, Texas Department of Transportation, to Michael W. Behrens, P.E., Executive Director, Texas Department of Transportation, at 4 (July 18, 2003) (attached to Request Letter) (on file with the Opinion Committee) [hereinafter TxDOT Brief].

constitutionally dedicated to a particular purpose cannot be allocated to any other purpose. *Id.*; *see also Gulf Ins. Co. v. James*, 185 S.W.2d 966, 971 (Tex. 1945), *Brazos River Conservation & Reclamation Dist. v. McCraw*, 91 S.W.2d 665, 674 (Tex. 1936).

The answer to your first question depends on whether article VIII, sections 7-a and 7-b, properly construed, dedicate to highway purposes the proceeds from the sale of an agency's salvage and surplus personal property originally purchased with constitutionally dedicated funds. When construing a constitutional provision we must attempt to give it the effect the makers and adopters intended. *Doody v. Ameriquest Mort. Co.*, 49 S.W.3d 342, 344 (Tex. 2001). It is presumed that the constitution's language was carefully selected, and its words should be construed as they are generally understood. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). Consequently, we "must rely heavily on its literal text and must give effect to its plain language." *Doody*, 49 S.W.3d at 344.

Article VIII, sections 7-a and 7-b dedicate certain taxes, fees, and federal funds, which must be used for certain highway purposes. The provisions are silent about any other revenue source. To include within the provisions a dedication of proceeds derived from the sale of agency personal salvage or surplus property would introduce an entirely different concept from taxes, fees and federal funds. We may add words to a constitutional or statutory provision only as necessary to achieve clear intent. *Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971); *see also Office of Attorney General of Texas v. Lee*, 92 S.W.3d 526, 529 (Tex. 2002) (applying rule to statutory provision). Article VIII, sections 7-a and 7-b do not evidence an intent to dedicate any revenue sources other that the enumerated taxes, fees, and federal funds.

We may also consider constitutional provisions and amendments that relate to the same subject matter and construe them in light of each other. *Doody*, 49 S.W.3d at 344. Comparing other constitutional dedications of revenue we note that article VIII, sections 7-a and 7-b do not create or refer to a special constitutional fund as is common with other constitutional dedications. For example, article III establishes several limited-use funds initiated by bond issues. *See, e.g.*, TEX. CONST. art. III, §§ 49-b (creating Veterans' Land Fund), 49-e (creating the Texas Park Development Fund), 50-c (creating Farm and Ranch Loan Security Fund). Article VII establishes funds for educational purposes such as the permanent school fund and the permanent university fund. *Id.* art. VII, §§ 5(a) (creating permanent school fund and requiring interest derived from it be applied annually to the support of public free schools), 11 (establishing the permanent university fund and restricting income to university purposes). Article XVI, section 70 establishes the Texas Growth Fund as a trust fund for state education funds and pension systems. *Id.* art. XVI, § 70.

Article VIII, sections 7-a and 7-b revenues, on the other hand, are held in the state highway fund, which was created by statute prior to the adoption of article VIII, section 7-a. *See* Tex. Att'y Gen. Op. No. JM-323 (1985) at 2 (tracing state highway fund to Act of March 15, 1917, 35th Leg., R.S., ch. 190, § 23, 1917 Tex. Gen. Laws 416, 424-25). The state highway fund contains funds from statutorily dedicated sources as well as constitutionally dedicated revenues. *See, e.g.*, TEX. GOV'T CODE ANN. §§ 411.145 (Vernon Supp. 2004) (fees for conducting DNA analysis), 442.0065 (money from sales of guidebook); TEX. OCC. CODE ANN. § 2301.156 (Vernon 2004) (civil penalties for

violations of chapter concerning sale or lease of motor vehicles). As we have previously described the state highway fund

> The state highway fund therefore is not a constitutional fund in its entirety. It consists of funds dedicated to highway purposes by the constitution as well as funds statutorily required to be placed in the highway fund. It thus can be described as a collection of constitutional and non-constitutional funds.

Tex. Att'y Gen. Op. No. JM-323 (1985) at 2. Consequently, although formerly the proceeds from the sale of TxDOT salvage or surplus property may have been deposited into the state highway fund by statute, that alone does not establish that such proceeds are constitutionally dedicated.

In contrast with article VIII, sections 7-a and 7-b, some constitutional provisions expressly dedicate proceeds from the sale of property. Article VII, section 4 requires the land allocated to the Public Free School Fund to be sold and the proceeds to be used to purchase other land or invested by the treasurer. *See* TEX. CONST. art. VII, § 4. The "principal arising from the sale of the lands" is the permanent school fund. *Id.* § 5. Similarly, article VII, section 11 provides in part that

> In order to enable the Legislature to perform the duties set forth in the foregoing Section, [requiring the legislature to establish and provide for the maintenance, support, and direction of the University of Texas] . . . all lands and other property heretofore set apart and appropriated for the establishment and maintenance of the University of Texas, *together with all the proceeds of sales of the same* . . . shall constitute and become a Permanent University Fund.

*Id.* art. VII, § 11 (emphasis added). The dedications of sale proceeds in article VII, sections 4 and 11 were in the constitution as adopted in 1876. *See id.* art. VII, § 4 historical note (Vernon 1993) [Act of May 21, 1985, 69th Leg., R.S., S.J.R. No. 21, 1985 Tex. Gen. Laws 3361, 3361-62]; *id.* art. VII, § 11 historical note (Vernon 1993) [Act of April 25, 1931, 42d Leg., R.S., S.J.R. No. 26, 1931 Tex. Gen. Laws 914, 914-15]. Consequently, when article VIII, section 7-a was added in 1946, and section 7-b in 1986, the makers and voters had before them the example of the constitutional provisions for the Public Free School Fund and the Permanent University Fund, which expressly dedicate proceeds from the sale of property. That article VIII, sections 7-a and 7-b do not similarly expressly dedicate sale proceeds must be afforded weight. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (as it is presumed that every word in a statute was chosen with a purpose, it is also presumed that every word excluded from a statute was excluded for a purpose).

There have been few decisions construing what revenues should be included in the article VIII, sections 7-a and 7-b dedication of revenues from registration fees, motor fuel taxes, and federal funds. One court has held that interest earned on constitutionally dedicated funds becomes part of the fund and like the fund may not be diverted to unauthorized purposes. *See Lawson v. Baker*, 220 S.W. 260, 272 (Tex. Civ. App.–Austin 1920, writ ref'd). In *Lawson*, the court

determined that the mere deposit of constitutionally dedicated funds awaiting investment or disbursement does not interfere with their constitutional application and is not an unconstitutional diversion under article VIII, section 7. *Id.* at 272. The court held, however, that interest is an accretion on principal, and becomes a part of it, so that interest earned on constitutionally dedicated funds must also be used for constitutional purposes. *Id.* Based on *Lawson*, this office has determined that the interest on the constitutionally dedicated highway funds may not be diverted to the general revenue fund. Tex. Att'y Gen. Op. No. JM-321 (1985) at 3-4. Conversely, we have determined that interest earned on nonconstitutional funds in the state highway fund may be appropriated for general revenue purposes. Tex. Att'y Gen. Op. No. JM-323 (1985). However, under *Lawson*, interest merely represents fund growth and should not be considered separately from it for constitutional dedication purposes. The reasoning in *Lawson* sheds little light on whether article VIII, sections 7-a and 7-b dedicate the proceeds from property sold as salvage or surplus property that was purchased for highway purposes with constitutionally dedicated funds.

Attorney general opinion DM-370 addressed an issue similar to the one before us—the disposition of oil and gas royalties attributable to highway right-of-way property purchased with constitutionally dedicated funds.[4] It concluded that article VIII, section 7-a did not apply to the oil and gas royalties "received for the depletion of real property, which in this case was purchased with money from the special fund." Tex. Att'y Gen. Op. No. DM-370 (1995) at 6. The opinion in DM-370 noted that article VIII, section 7-a on its face dedicates only net revenues from motor vehicle registration fees and gasoline taxes and does not refer to proceeds on land purchased with those fees and revenues, while other constitutional provisions such as article VII, sections 4 and 11 expressly dedicated proceeds from the sale of property. *Id.* Because article VIII, section 7-a does not include comparable language, attorney general opinion DM-370 concluded

> If the legislature had wished to propose to the electorate a constitutional amendment that dedicated proceeds received for the use of land purchased with motor vehicle registration fees and revenues from the gasoline tax, it clearly could have done so. In the absence of such a provision, we conclude that article VIII, section 7-a does not require the department to credit to the special fund created in article VIII, section 7-a oil and gas royalties received for the depletion of highway rights-of-way acquired with money from the special fund.

Tex. Att'y Gen. Op. No. DM-370 (1995) at 7.

For the same reasons, we conclude that the dedications of certain taxes, fees, and federal funds in article VIII, sections 7-a and 7-b cannot be construed to include the proceeds received from

---

[4]Although the requestor referred to specific properties that were acquired with non-dedicated funds, he also asked the following general question: "[W]hether income from land purchased with constitutionally dedicated funds must be credited to the constitutional fund." Tex. Att'y Gen. Op. No. DM-370 (1995) at 2. The opinion addressed the general question.

the sale of agency salvage or surplus personal property. Had the promulgators of section 7–a intended that proceeds from the sale of agency personal property purchased with constitutionally dedicated funds be also subject to the same dedication, they could have said so. Instead, section 7–a expressly dedicates only revenues from certain sources, registration fees and motor fuel taxes, to be used for highway purposes. And under *Lawson*, interest on such fees and taxes, earned prior to disbursement for constitutional purposes, is also constitutionally dedicated. But the dedications in article VIII, sections 7–a and 7–b do not include the proceeds from the sale of agency salvage or surplus personal property.

A number of state constitutions have dedicated vehicle and fuel taxes to highway purposes. *See* 2 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 618 (1977). The courts and attorneys general of some of these states have considered whether a constitutional dedication of funds for highway purposes also applies to property purchased with dedicated revenues and concluded that the constitutional dedication does attach to such property and its proceeds. *See, e.g., Craig County Excise Bd. v. Texas-Empire Pipe Line Co.*, 159 P.2d 1003 (Okla. 1945); Mich. Att'y Gen. Op. No. 6608 (1990); Or. Att'y Gen. Op. No. 7662 (1978).

In *Craig County Excise Board*, the Supreme Court of Oklahoma considered whether certain county funds should be placed in the county general fund or the county highway fund, which consisted of gasoline excise taxes designated for highway purposes. The money had been derived from selling condemned equipment, renting county road machinery, and performing services for another political subdivision. *See Craig County Excise Bd.*, 159 P.2d at 1003. The Oklahoma Constitution includes an anti-diversion provision stating that "no tax levied and collected for one purpose shall ever be devoted to another purpose," *id.* at 1004 (quoting OKLA. CONST. art. X, § 19), and the court concluded that this provision "extends to money in restoration or reimbursement to such fund for moneys expended therefrom." *Id.* The court based its decision by analogizing with Oklahoma's constitutional limitation on governmental use of borrowed funds to specified purposes. *See id.* at 1005 (citing *Protest of Reid*, 15 P.2d 995, 998 (Okla. 1932)).

The Oregon attorney general has interpreted a state constitutional provision stating that "[t]he proceeds from any tax levied" on motor vehicle fuels and "the proceeds from any tax or excise levied on the ownership, operation or use of motor vehicles" shall be used exclusively to construct, improve, repair, maintain, operate, and police public highways.[5] *See, e.g.*, Or. Att'y Gen. Op. Nos. 8250 (1997) (use of dedicated highway funds to generate revenue for nonhighway purposes violates constitution), 6329 (1989) (proceeds of highway fund may not be used to fund voter registration functions of Motor Vehicles Division). Analogizing to interest, the Oregon attorney general has concluded that rents and profits from property purchased with constitutionally dedicated money are likewise constitutionally dedicated. Or. Att'y Gen. Op. Nos. 7662 (1978) at 2 (but determining that fines from prosecution of traffic offenses are not constitutionally dedicated), 7445 (1977) at 5 (determining that income from property purchased with dedicated funds is also dedicated).

---

[5]That provision is now article IX, section 3a of the Oregon Constitution, which replaced former article IX, section 3. *See* OR. CONST. art. IX, § 3a.

However, the proceeds from a salvage or surplus personal property is unlike income generated by real property.

A Michigan attorney general opinion also concluded that the constitutional dedication of funds to highway purposes applied to property purchased with the dedicated funds. *See* Mich. Att'y Gen. Op. No. 6608 (1990) (construing Michigan Constitution article IX, section 9, providing that certain taxes "be used exclusively for transportation purposes as set forth in this section"). The Michigan attorney general rejected "[a] strict, literal reading" of the constitutional provision as limiting the restrictions to the tax revenues expressly mentioned. *Id.* at 4. Instead, the opinion relied on *Craig County Excise Board*, and other decisions determining that interest and income on property purchased with dedicated funds are likewise subject to the dedication. *Id.* at 6. Consequently, the opinion determined that property purchased with funds constitutionally restricted to transportation purposes could not be conveyed for less than fair market value to another governmental entity that would use the property for other purposes. *See id.*

None of these cases from other jurisdictions inform the issue here. The proceeds from the sale of salvage or surplus personal property purchased by TxDOT for highway purposes are not analogous to interest or rent. Personal property purchased for highway purposes is generally not purchased for the purpose of generating a profit or return. As in Texas attorney general opinion DM-370, we rely on the plain language of sections 7–a and 7–b, and conclude that their dedications do not include the proceeds from the sale of agency salvage or surplus personal property.

The TxDOT Brief expresses the concern that reliance on the literal language of section 7–a would defeat its intent because the Legislature could require TxDOT to purchase then sell real or personal property:

> The legislature has the power through the appropriations process to require TxDOT to sell property, including property purchased with constitutionally dedicated revenues . . . . [I]f the legislature can order the sale of property purchased with constitutionally dedicated revenues, and if the legislature can then redirect the proceeds to general revenue, the purposes of Article VIII, Sections 7–a and 7–b, can be thwarted.

TxDOT Brief, *supra* note 3, at 7.

However, that hypothetical situation goes beyond your question as you have presented it. A statute is not facially invalid simply because it could be unconstitutionally applied to hypothetical facts that have not yet arisen. *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 463 (Tex. 1997). Moreover, courts reviewing an as-applied challenge must evaluate how the statute operates in practice against the complaining party. *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002). It has not been suggested that the amendment to Government Code section 2175.134(a) is a subterfuge to defeat the constitutional dedication of revenues, or has been applied to property purchased with dedicated

revenue but never used for constitutional purposes. Finally, it is important to note the limits of our opinion—that article VIII, section 7–a and 7–b do not dedicate the proceeds from the sale of agency salvage or surplus personal property. As noted previously, interest on dedicated funds accruing prior to expenditure for constitutional purposes is likewise subject to constitutional dedication. Tex. Att'y Gen. Op. No. JM-321 (1985) at 3-4. Our opinion does not extend to real property or property producing income or other gains. We reserve any question not presented by the facts suggested here. Accordingly, Government Code section 2175.134(a) as amended by the Seventy-eighth Legislature is not unconstitutional as applied to the proceeds from the sale of salvage or surplus personal property purchased with revenues constitutionally dedicated to highway purposes under the facts presented here.

Secondly, you ask whether section 2175.134, as amended by the Seventy-eighth Legislature, applied to the proceeds of the April 2003 auction of state personal property. You state that the Texas Building and Procurement Commission notified TxDOT on May 27, 2003, that it would deposit the proceeds from the April auction of state personal property, including purchases made with constitutionally dedicated revenues, into the general revenue fund. Request Letter, *supra* note 1, at 2.

The Legislature amended section 2175.134(a), effective June 18, 2003, to provide for crediting to the general revenue fund proceeds from the sale of surplus and salvage property. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 309, §§ 7.29, 11.01, 2003 Tex. Gen. Laws 1295, 1304-05, 1309. The bill amending section 2175.134 provides that "[t]he changes in law made by this article [article 7] to Chapter 2175, Government Code, apply only to surplus and salvage property of the state sold on or after September 1, 2003." *See id.* § 7.38, 2003 Tex. Gen. Laws at 1306. The amended version of section 2175.134 did not apply to the proceeds of state personal property sold in April 2003, or at any time before September 1, 2003.

The Seventy-eighth Legislature also adopted House Bill 7, effective June 21, 2003, which made supplemental appropriations to state agencies and also reduced current appropriations. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 1311, §§ 1, 2, 2003 Tex. Gen. Laws 4796, 4809 (appropriating funds to Health and Human Services Commission and Department of Health). Section 20(a) of House Bill 7 amended a section of the 2001 general appropriations act that appropriated receipts from the sale of surplus property to the agency holding the property. *See* General Appropriations Act, 77th Leg., R.S., ch.1515, § 8.04, 2001 Tex. Gen. Laws 5411, 6310, *amended by* Act of June 1, 2003, 78th Leg., R.S., ch. 1311, § 20a, 2003 Tex. Gen. Laws 4796, 4808. The amendment provides that "[n]otwithstanding Section 8.04, page IX-67, Chapter 1515, Acts of the 77th Legislature, Regular Session, 2001 (the General Appropriations Act)," all receipts from the sale of surplus or salvage property "received by a state agency during the state fiscal year ending August 31, 2003, shall be deposited to undedicated general revenue." *See* Act of June 1, 2003, § 20(a), 2003 Tex. Gen. Laws at 4808.

The amendment to the General Appropriations Act of 2001 by House Bill 7 section 20(a) was inconsistent with the language of Government Code section 2175.134 as it read prior to September 1, 2003. General laws may not be adopted, repealed, or amended by a general appropriations act.

*See* TEX. CONST. art. III, § 35; *Strake v. Court of Appeals*, 704 S.W.2d 746 (Tex. 1986), *Moore v. Sheppard*, 192 S.W.2d 559 (Tex. 1946), *Linden v. Finley*, 49 S.W. 578 (Tex. 1899); Tex. Att'y Gen. Op. Nos. MW-585 (1982), MW-51 (1979). A rider that attempts to alter existing substantive law is a matter of general legislation that may not be included in a general appropriations act. Thus, a rider that amends, modifies, repeals, or conflicts with existing general law or that attempts to nullify a constitutional provision other than article III, section 35, is invalid. To the extent that section 20(a) of House Bill 7 attempts to amend Government Code section 2175.134, it is invalid. The Texas Building and Procurement Commission did not have authority to deposit the proceeds from the April auction of state personal property into the general revenue fund.

## S U M M A R Y

Proceeds from the sale of agency salvage or surplus personal property purchased with funds dedicated to highway purposes by Texas Constitution article VIII, sections 7–a and 7–b are not themselves constitutionally dedicated to highway purposes. Accordingly, proceeds from the sale of agency salvage or surplus property that was purchased with revenues constitutionally dedicated to highway purposes and sold on or after September 1, 2003 may be placed in the general revenue fund.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee